# In the United States District Court
# for the Southern District of Georgia
# Statesboro Division

JERRY SCOTT HEIDLER,

     Petitioner,

     vs.

BRUCE CHATMAN, Warden, Georgia
Diagnostic and Classification
Center,

     Respondent.

CV 611-109

## ORDER

Presently before the Court is Petitioner's Motion for Leave to Conduct Discovery. See Dkt. No. 59. Upon due consideration, Petitioner's motion is **DENIED**.

## I. Background

After a jury trial in the Superior Court of Walton County, Georgia, Petitioner was convicted of four counts of malice murder, one count of kidnapping with bodily injury, three counts of kidnapping, one count of aggravated sodomy, one count of aggravated child molestation, one count of child molestation, and one count of burglary. See Dkt. Nos. 12-7, Ex. 2C, at 108-16; 12-8, Ex. 2D, at 1-2.

AO 72A
(Rev. 8/82)

Following the sentencing phase of trial, the jury found that aggravating circumstances existed and recommended a sentence of death for each of the four counts of malice murder. Dkt. No. 12-8, Ex. 2D, at 13-16. Accordingly, in September 1999, the trial court sentenced Petitioner to death for each count. Id. at 18-25. The trial court also sentenced Petitioner to consecutive terms of life imprisonment for the kidnapping with bodily injury and aggravated sodomy counts; 30 years (consecutive) for the aggravated child molestation count; and 20 years (consecutive) for each of the remaining counts. Id. at 26.

Petitioner filed a motion for new trial and later amended that motion. See id. at 41-42, 55-56. Following a hearing, Petitioner's amended motion for a new trial was denied. See id. at 44-48; Dkt. No. 12-9, Ex. 2E, at 1-14. The Supreme Court of Georgia affirmed Petitioner's sentences of death. Heidler v. State, 273 Ga. 54 (2000); Dkt. No. 15-18, Ex. 50. The Supreme Court of Georgia reversed Petitioner's sentence for aggravated child molestation, which the court found merged into the aggravated sodomy count. Id. The court affirmed all of Petitioner's other sentences. Id. Thereafter, the Supreme Court of the United States denied Heidler's petition for writ of certiorari. Heidler v. Georgia, 532 U.S. 1029 (2001), reh'g

AO 72A
(Rev. 8/82)

denied, 533 U.S. 965 (2001); Dkt. Nos. 15-23, Ex. 55; 16-2, Ex. 57.

In November 2001, Petitioner filed a habeas corpus petition in the Superior Court of Butts County, Georgia ("state habeas court"). See Dkt. No. 16-3, Ex. 58. In April 2004, Petitioner amended that petition. See Dkt. No. 18-4, Ex. 89. Petitioner's amended state habeas petition stated 16 grounds for relief. See id. In January 2006 and May 2006, the state habeas court conducted evidentiary hearings. See Dkt. No. 31-12, Ex. 173A, at 9. In August 2009, the state habeas court denied relief from Petitioner's convictions and sentences. See Dkt. Nos. 31-12, Ex. 173A; 31-13, Ex. 173B. The Supreme Court of Georgia denied Petitioner's petition for a certificate of probable cause. See Dkt. No. 31-18, Ex. 177.

In October 2011, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Dkt. No. 1. In April 2012, Petitioner amended his petition. Dkt. No. 45.

Presently before the Court is Petitioner's Motion for Leave to Conduct Discovery. Dkt. No. 59. The motion is fully briefed. Dkt. Nos. 59; 60; 63.

AO 72A
(Rev. 8/82)

## II. Petitioner's Motion for Discovery

Petitioner's motion relates to various claims arising from (A) evidence regarding the kidnapping victims and possible abuse not related to Petitioner and (B) information regarding the poor security conditions of the detention center from which Petitioner escaped. Dkt. Nos. 59, at 1; 63, at 3, 14-15. For the reasons discussed below, Petitioner's discovery requests are **DENIED**.

### A. Victim Evidence

#### 1. Background and Arguments of Evidence at Issue

A jury convicted Petitioner of killing four members of a family who had housed one of his sisters as a foster child for a short period of time, kidnapping three of the surviving children, and sexually abusing one of them ("the victim"). See Dkt. No. 59, at 7-8. As to the assault of the victim, the primary evidence consisted of: Petitioner's videotaped inculpatory statements; the videotaped statements of two surviving children regarding their kidnapping and the sexual abuse of one of them; DNA evidence linking Petitioner to a cigarette butt found at the murders' location and semen located on the victim's panties; and testimony from a pediatrician that the victim had a "very small" tear on her anus. Id. at 8.

Petitioner seeks discovery of information, an opportunity that the state habeas court denied, to develop his claim that

the state suppressed material exculpatory evidence.  See id. at

11-18.  The asserted evidence concerns whether the victim and

another kidnapped child had previously been sexually abused by a

different individual.  Id. at 11.  According to Petitioner, this

evidence—which might have provided an alternative explanation

for what caused the victim's anal tear—would have undermined the

credibility of the girls' videotaped statements, which included

"somewhat contradictory" accounts of how the victim was sexually

assaulted.  Id. at 11, 15.  Petitioner believes that the girls'

testimony exhibited some familiarity with human sexuality, which

Petitioner argues is "unusual (given their young ages)."  Id. at

13.  Petitioner contends that this "premature familiarity with

sexuality must have been particularly troubling to jurors."  Id.

at 14.

Purportedly, the girls' evidence constituted a "highly

aggravating circumstance that likely resulted in the jury's

imposition of the death sentences."  Id. at 11-12.  Petitioner

contends that this testimony was the "critical evidence" of

sexual assault because other evidence, such as Petitioner's

confession, lacked reliability.  Id. at 12-13.

2. DFCS Records Under Direct Review

On direct review, the Supreme Court of Georgia found no

Brady violation "based upon the purported failure of the State

to turn over his Department of Family & Children Services (DFCS)

records that were in its possession." Heidler, 273 Ga. at 55(2). These records were from various counties and all in regard to Petitioner and his family—not the victims. Dkt. Nos. 14-11, Ex. 32, at 44; 15-13, Ex. 45B, at 121; 15-14, Ex. 46, at 2. The Court found no error because (A) the prosecution had disclosed DFCS records in its possession and (B) Petitioner could obtain the records from DFCS by means of his own separate subpoena. Heidler, 273 Ga. at 55(2).

### 3. The Relevant Claims in State and Federal Petitions

#### a. The Brady Claim

Petitioner's initial state habeas petition, filed in 2001, asserted that the prosecution team failed to disclose "evidence in its possession which was material, and exculpatory or favorable to Petitioner on issues of guilt and/or punishment." Dkt. No. 16-3, Ex. 58 ¶ 19. The habeas petition was amended twice (in April 2004 and January 2006), each time including a more specific allegation that "[t]he State suppressed information favorable to the defense at both phases of the trial, including but not limited to records from . . . the Department of Family and Children Services." Dkt. Nos. 18-4, Ex. 89 ¶ 55; 18-25, Ex. 110, at 27. In comparison, the amended federal habeas petition claims that "the State suppressed information favorable to the defense at Petitioner's trial, including the conviction phase and the sentencing phase,"

without specifying what evidence was suppressed. Dkt. No. 45
¶ 40.

### b. The Strickland Claim

Although Petitioner's state habeas petition does not
specifically assert a claim based on trial counsel's failure to
obtain and present the evidence at issue, Petitioner asserted a
broadly worded claim that could plausibly be read to encompass
it. See, e.g., Dkt. No. 18-25, Ex. 110, at 18 ("Counsel failed
to present material evidence that was reasonably available to
counsel during Petitioner's guilt/innocence and
aggravation/mitigation trials."). Likewise, in the present
action, he asserts a variety of Strickland claims, some of which
could be broadly read as asserting an error based on failure to
explore the victims' backgrounds. See Dkt. No. 45, at 15.

### 4. Petitioner's State Motions for Discovery

In November 2003 and March 2004, Petitioner moved to
discover DFCS records of two of the victims based on the
evidence mitigating or exculpating Petitioner's guilt for
aggravated sodomy and being "essential to Petitioner's
postconviction claims," without specifying which claims. Dkt.
Nos. 16-17, Ex. 72, at 3; 18-2, Ex. 87, at 3. On January 21,
2004, the state habeas court conducted a two-hour-and-ten-minute
hearing on these and other discovery motions. Dkt. Nos. 59, at
16; 16-29, Ex. 84. There, Petitioner clarified that the

AO 72A
(Rev. 8/82)

information would be relevant to his claim for ineffective assistance of counsel. Dkt. No. 16-29, Ex. 84, at 5. The court, after counsels' arguments and reviewing the contents of DFCS records in camera with the assistance of two DFCS workers, concluded that the records contained nothing relevant—that is, "no instances of any allegations or any complaints of child molestation except" in regard to Petitioner. Dkt. Nos. 59, at 16; 16-29, Ex. 84, at 46-47.

Petitioner challenges how this proceeding was conducted, as he believes that the court could not have spent much time reviewing a "box" of documents and erroneously conducted its review with "the input and assistance of the two ladies from [DFCS]," the agency that had moved to quash Petitioner's subpoena. Dkt. Nos. 59, at 16-17; 16-29, Ex. 84, at 16-17. From a concluding exchange between the court and DFCS official about how the court was ruling on pending motions, Petitioner speculates that the court engaged in an ex parte discussion with the DFCS official.[1] Dkt. No. 59, at 17-18.

---

[1] The relevant portion of the exchange in full was:

> [DFCS OFFICIAL]: Judge, I need to know how to draft my order. And what I have heard you say is that you are finding the entire contents of the record that you have reviewed as irrelevant or not otherwise admissible—
>
> THE COURT: Correct.
>
> [DFCS OFFICIAL]: --and are therefore granting--with regard to Jeff Davis [DFCS] motion to quash you are granting the motion after in camera inspection.

AO 72A
(Rev. 8/82)

In June 2004, Petitioner again moved for discovery of the victims' records. Dkt. No. 18-2, Ex. 87. In January 2006, the state habeas court officially denied Petitioner's discovery requests. Dkt. Nos. 59, at 18; 18-23, Ex. 108. Thereafter, in August 2009, the state habeas court found barred that portion of the state petition "wherein Petitioner alleges that the prosecutor suppressed records from [DFCS], (see <u>Heidler v. State</u>, 273 Ga. at 55(2))." Dkt. No. 31-12, Ex. 173A, at 4.

### 5. Exhaustion and Merits of the Two Claims

The Court denies Petitioner's request for discovery of DFCS records related to two of the victims. The <u>Brady</u> claim is unexhausted, and even if it was exhausted, Petitioner would still be denied an opportunity to conduct discovery on the claim. Although the <u>Strickland</u> claim is exhausted, it does not justify discovery.

### a. No Exhaustion of Petitioner's <u>Brady</u> Claim

Petitioner has failed to exhaust a <u>Brady</u> claim based on the underlying evidence. In general, a federal court may not grant habeas relief to a state prisoner who has not exhausted his

---

THE COURT: Correct.

[DFCS OFFICIAL]: And with regard to the Toombs [DFCS] objection to the request for production, you are denying the request in toto and ruling in favor of me and the department on my objection. Is that correct?

THE COURT: That's correct.

Dkt. No. 16-29, Ex. 84, at 56.

AO 72A
(Rev. 8/82)

available state remedies. 28 U.S.C. § 2254(b)(1)(A).

Exhaustion of state remedies requires that the state prisoner
"fairly present federal claims to the state courts in order to
give the State the opportunity to pass upon and correct alleged
violations of its prisoners' federal rights." Duncan v. Henry,
513 U.S. 364, 365 (1995) (quoting Picard v. Connor, 404 U.S.
270, 275 (1971)) (alterations and internal quotation marks
omitted). Fairly presenting such federal claims to state courts
gives the state "the first opportunity to hear the claim sought
to be vindicated in the federal habeas proceeding." Ogle v.
Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (quoting Picard,
404 U.S. at 275-76).

Fair presentation requires presenting federal claims "to
the state courts in a manner to alert them that the ruling under
review violated a federal constitutional right." Pearson v.
Sec'y, Dep't of Corr., 273 F. App'x 847, 849-50 (11th Cir. 2008)
(per curiam) (citing Duncan, 513 U.S. at 365-66). The claim
presented to the state courts "must include reference to a
specific federal constitutional guarantee, as well as a
statement of the facts that entitle the petitioner to relief."
Reedman v. Thomas, 305 F. App'x 544, 545-46 (11th Cir. 2008)
(per curiam) (citing Gray v. Netherland, 518 U.S. 152, 162-163
(1996)); see also McNair v. Campbell, 416 F.3d 1291, 1302 (11th
Cir. 2005) (requiring "that a petitioner present[] his claims to

AO 72A
(Rev. 8/82)

the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation'" (quoting Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344-45 (11th Cir. 2004))).

In the case at bar, no exhaustion is shown for Petitioner's claim that, in regard to DFCS records about the victims, "the State withheld material exculpatory and impeachment evidence having direct bearing on both his convictions and death sentences." Dkt. No. 59, at 1. Indisputably, the DFCS records pertaining only to Petitioner and his family are fully exhausted: the Supreme Court of Georgia was provided an opportunity to find no Brady violation on direct review of Petitioner's trial, and the state habeas proceeding found the same claim barred for being litigated adversely to Petitioner on direct appeal. See Heidler, 273 Ga. at 55(2); Dkt. Nos. 31-12, Ex. 173A, at 4; 46, at 23 (admitting that Petitioner's Brady violation is properly before the court "[t]o the extent th[e] claim refers to the State's alleged failure to turn over [DFCS] records," which was rejected on the merits by the Supreme Court of Georgia, while opining that other suppression claims are unexhausted). As to the victims' records, the Court cannot come to the same conclusion.

Indeed, the amended state habeas petition stated a claim for failure to disclose DFCS records, but an ambiguity exists

for whether this claim was for only the Petitioner and his family's records, or also for those of the victims. Although Petitioner moved for disclosure of the victims' records in the state habeas case, the motions only say that the evidence is "essential to Petitioner's postconviction claims." Dkt. Nos. 16-17, Ex. 72, at 3; 18-2, Ex. 87, at 3. However, at the state evidentiary hearing, Petitioner's counsel clarified that the evidence was relevant to his claim for ineffective assistance of counsel. The Court has found nothing in the record where Petitioner asserts a Brady violation based on these records. Ultimately, when addressing Petitioner's specific Brady claim related to DFCS records, the state habeas court implicitly treated the claim as one in relation to the DFCS records at issue under direct review. See Dkt. No. 31-12, Ex. 173A, at 4 (citing "Heidler v. State, 273 Ga. at 55(2)"). Therefore, the Court cannot find that a Brady claim premised upon the victims' records was present in the state court "such that the reasonable reader would understand [the] claim's particular legal basis and specific factual foundation." Kelley, 377 F.3d at 1344-45.

Even assuming the claim was exhausted, the Court would nevertheless deny Petitioner's request for discovery. "A habeas petitioner . . . is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). However, pursuant to Rule 6 of the Rules Governing § 2254 Cases,

AO 72A
(Rev. 8/82)

the court may authorize a party to conduct discovery upon a showing of "good cause." 28 U.S.C. § 2254, Rule 6; see also Bracy, 520 U.S. at 904. Good cause is demonstrated "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)) (ellipsis omitted). "[G]ood cause for discovery cannot arise from mere speculation" or "pure hypothesis." Arthur v. Allen, 459 F.3d 1310, 1311 (11th Cir. 2006) (per curiam), modifying 452 F.3d 1234 (11th Cir. 2006).

The Court would be unable to find good cause because there is no reason to believe that a full development of the facts would demonstrate that Petitioner is entitled to relief. Petitioner asserts a Brady claim, in which "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, "(1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice." United States

AO 72A
(Rev. 8/82)

v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011) (quoting Stephens v. Hall, 407 F.3d 1195, 1203 (11th Cir. 2005)).

The Court cannot find that a full development of the facts would enable Petitioner to meet his Brady burden. The evidence speculated to exist would not be material to establish prejudice. There must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). Beyond the victims' testimony and positive identification of Heidler, to which Petitioner claims the records would be relevant, Petitioner's convictions related to the victim's assault were supported by other compelling pieces of evidence:

- DNA from seminal fluid found on the victim's panties and nightgown matched that of Petitioner, Dkt. No. 13-17, Ex. 26, at 445-46, 449-55;

- hours after the assault, an examination of the victim revealed a "clean new cut" on the anus with no evidence of healing, id. at 438-42; and

- Petitioner confessed to the crimes shortly after being detained, Dkt. No. 59, at 6-7.

Facing this evidence, the Court finds that Petitioner has not shown that DFCS records, even if they have what they are alleged to contain, would give reason to believe that he may be entitled

AO 72A
(Rev. 8/82)

to relief under Brady.  As to the testimony's relevance during
sentencing, the death penalty was imposed in relation to
different offenses and aggravating circumstances—that is, that
there were multiple murders that were committed while Petitioner
was involved in the commission of a burglary.  See Dkt. No.
12-8, Ex. 2D, at 692-95.  Further, the Court countenances the
state habeas court's in camera inspection of the records at
issue and determination that they contained nothing relevant to
Petitioner's case.  Although Petitioner speculates that the
inspection was cursory and tainted by the presence of DFCS
officials, this unsupported postulation is insufficient to
establish good cause that the facts would be any different from
those found by the state habeas court.  See Williams v.
Humphrey, No. CV412-106, 2013 WL 3877750, at *5 (S.D. Ga. July
26, 2013) (citing Arthur, 459 F.3d at 1311).

                    b. No Merit to Petitioner's Strickland Claim

     In contrast to the Brady claim, the Court finds that
Petitioner fairly presented a Strickland claim in the state
action that was premised upon the underlying evidence sought to
be discovered.  At the motions hearing, Petitioner argued that
the victims' records were being pursued for an ineffective-
assistance-of-counsel claim.  Dkt. No. 18-25, Ex. 110, at 5.
The court heard argument about the records.  Id. at 5-24.  Then,
it concluded that the DFCS records were either irrelevant to

AO 72A
(Rev. 8/82)

such a claim or otherwise inadmissible. Id. at 47, 56. By presenting his claim and the specific facts underlying it, the state court was given an opportunity to address the claim, but ultimately concluded that there was no evidence to support it. Although Petitioner did not further raise a Strickland claim on these specific facts at issue, the state habeas court ultimately concluded that Petitioner's trial counsel generally conducted a reasonable investigation, which included gathering voluminous documents from various sources. Dkt. No. 31-12, Ex. 173A, at 59-60. Therefore, the Court finds that Petitioner's Strickland claim is exhausted.

Nevertheless, the Court declines to permit discovery of the information sought. Petitioner's claim is governed by Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, a petitioner must show (1) counsel's performance was deficient and (2) that deficiency prejudiced him. Id. at 687. Counsel's performance is deficient when it falls "below an objective standard of reasonableness," Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000), which means that it is "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Further, "the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled."

16

Chandler, 218 F.3d at 1313 (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)) (internal quotation marks omitted).

Courts conduct a highly deferential review of counsel's performance and "'indulge the strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. at 1314 (brackets omitted) (quoting Strickland, 466 U.S. at 689-90)). To establish prejudice, there must be "a reasonable probability that, but for counsel's [deficient performance], the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam). A petitioner must "affirmatively prove prejudice." Strickland, 466 U.S. at 693.

As with Petitioner's Brady claim, the shear amount of evidence blunts any claim that, had trial counsel used any information of abuse of the victims by others, there would have a reasonable probability that the proceedings would have been different. In addition to the victims' statements, Petitioner confessed on video to his crimes, and DNA evidence connected Petitioner directly to the victim's assault.

AO 72A
(Rev. 8/82)

Because a review of the record reveals no exhausted claim for which there is good cause to conduct discovery, Petitioner's request for discovery of DFCS files related to the victims is **DENIED**.

B. Jailer Testimony in Regard to Petitioner's Escape

Petitioner asks the Court to allow inspection of the Toombs County jail and access to its records about improvements since Petitioner's escape from jail. See Dkt. No. 59, at 23. The prosecutor's "highly aggravating" closing argument referenced a jail administrator's testimony, which Petitioner alleges contained misrepresentations about how Petitioner escaped and the number of weapons Petitioner possessed during pretrial detention. See id. at 19-21. Petitioner contends that the Court's consideration of his motion is proper because he had moved for access to the premises and records of the Toombs County jail in the state habeas action, although the motion was denied. Id. at 22-23. Presently, Petitioner claims that the evidence is relevant to (A) combat the prosecution's future dangerousness argument during sentencing, (B) Petitioner's claim for ineffective assistance of counsel, in that his trial attorney failed to adequately investigate the circumstances around Petitioner's escape, and (C) his Brady claim, in that the prosecution suppressed the information sought. Dkt. No. 63, at 14-16.

AO 72A
(Rev. 8/82)

1. Claim Already Determined to be Unexhausted

Petitioner's present motion is premised in part on testimony about the number of weapons possessed and the skill needed to dismantle jail doors, cages, and glass. Dkt. No. 59, at 20. The Court addressed these factual predicates to Petitioner's argument in the Court's Order on August 23, 2013. See Dkt. No. 56, at 34-37. There, the Court held that Petitioner has suffered from a procedural default on paragraph 42 of Claim II, for which Petitioner failed to show cause and prejudice sufficient to overcome the default. Id. at 33-37. More specifically, the Court found no inference that the prosecution withheld evidence or that Petitioner suffered from actual prejudice given the other evidence of his dangerousness. Id. at 35-37. Therefore, to the extent that Petitioner's motion reiterates these factual predicates as creating grounds for relief, the Court's August 2013 Order controls.

2. Unexhausted Claim Related to the Jail's Construction

The only distinct point concerns information about the strength of the jail's metal bars and how their poor quality may have mitigated the potential threat inferred from Petitioner's escape. See Dkt. No. 59, at 19-20. The Court now finds two bases to seek the information as unexhausted: (A) the jail information presented as being misleading and (B) the information as suppressed evidence underlying a Brady violation.

AO 72A
(Rev. 8/82)

### a. Misleading Information

After a thorough review of the state habeas record, the Court cannot find a transparent claim that the State presented false or misleading testimony regarding his escape, or challenging the propriety of the of prosecutor's future dangerousness argument. The crux of Petitioner's argument focuses on the prosecution's reliance on the jail administrator's testimony. Id. at 23. Although Petitioner moved for discovery of the same information in the state habeas case, Petitioner did not specify for what claim the motion would further. Instead, Petitioner merely said that the information is essential to "fully raise postconviction claims arising from his convictions and death sentence," and that there may be unique circumstances surrounding the escape in regard to structural deficiencies. Dkt. No. 16-18, Ex. 73, at 1-2.

Only two paragraphs in the state habeas petition are arguably related to this argument: paragraphs 52[2] and 55[3]. Dkt.

---

[2] Paragraph 52 asserted:

> The State's knowing presentation of false and/or misleading testimony violated Petitioner's right under Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340 (1935). The State allowed its witnesses to convey a false impression to the jury, and there is a reasonable likelihood that the false impression could have affected the jury. Giglio v. United States, 405 U.S. 150 (1972). The State knowingly or negligently presented false testimony in pretrial and trial proceedings, and there is a reasonable likelihood that the false testimony could have affected the judgment of the trial court and/or the jury at both phases of the trial. United States v. Agurs, 427 U.S. 97, 103 (1976).

AO 72A
(Rev. 8/82)

No. 18-4, Ex. 89 ¶¶ 52, 55.  Petitioner resurrected paragraph 52

in the state habeas action as paragraph 42 in the present

federal action, which the Court has already ruled to be

procedurally defaulted.  Dkt. Nos. 45 ¶ 42; 56, at 33-37.  As to

Paragraph 55, it specifically referenced the records from the

Toombs County Detention Center, but it did not reflect

Petitioner's present focus on the veracity of what the jail

administrator said.  Compare Dkt. No. 18-4, Ex. 89 ¶ 55

(focusing on the suppression of favorable information) with Dkt.

No. 59, at 23 (focusing on the propriety of the prosecutor's

future dangerousness argument).  Indeed, although Petitioner

moved to discover the information in the state habeas action,

---

Dkt. No. 18-4, Ex. 89 ¶ 52.

[3] Paragraph 55 asserted:

> The State suppressed information favorable to the defense
> at both phases of the trial, including but not limited to
> records from the Georgia Bureau of Investigation, the
> Toombs County Detention Center, and the Department of
> Family and Children Services.  The materiality of the
> suppressed evidence undermines the confidence in the
> outcome of the guilt/innocence and penalty phases of
> Petitioner's trial, and Petitioner's direct appeal, in
> violation of Brady v. Maryland, 373 U.S. 667 (1965), and
> Kyles v. Whitley, 115 S. Ct. 1555 (1995).  The State has a
> continuing obligation to disclose favorable evidence, which
> extends through postconviction proceedings, and the State
> may be continuing to withhold favorable evidence from
> Petitioner.  High v. Head, 209 F.3d 1257, 1265 (11th Cir..
> April 19, 2000); Thomas v. Goldsmith, 979 F.2d 746, 749-50
> (9th Cir. 1992).  The State took advantage of Petitioner's
> ignorance of the undisclosed favorable information by
> arguing to the jury that which it knew or should have known
> to be false and/or misleading.  United States v.
> Sanfilippo, 564 F.2d 176, 179 (5th Cir. 1977).

Dkt. No. 18-4, Ex. 89 ¶ 55.

AO 72A
(Rev. 8/82)

Petitioner's past motion focused on the information as mitigating the "aggravation evidence" during the sentencing phase—not a <u>Brady</u> violation as asserted in paragraph 55 of the state habeas action. Dkt. Nos. 16-18, Ex. 73, at 2; 18-5, Ex. 90, at 1-12. Thus, paragraph 55 is inapposite to this specific claim underlying the discovery request. Therefore, based on a review of the state habeas petition and its proceedings, the Court finds that Petitioner's claim for misleading testimony related to his escape is unexhausted.

Even assuming that the claim was exhausted, the Court would still deny Petitioner's motion for discovery. There must be "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." <u>Bracy</u>, 520 U.S. at 908-09 (ellipsis omitted) (quoting <u>Harris</u>, 394 U.S. at 300). Even if the facilities were poorly constructed and eased the difficulty of Petitioner's escape—or there were any misrepresentations related to construction—the Court finds no reason to believe that Petitioner would have been entitled to relief. Assuming evidence revealed defects in the detention center's design and construction that enabled Petitioner to escape, this would not substantially mitigate Petitioner's actions. Cf. <u>Johnson v. State</u>, 246 Ga. 126, 128 (1980) ("[N]egligence of the keeper of the jail is no defense to

a charge of escape." (internal quotation marks omitted)).
Further, as noted in the Court's August 2013 Order, there was
ample testimony from which the jury could have concluded that
Petitioner was a future danger to society, including:

- Petitioner's statement, while showing the word "Sandman"
  tattooed on his knuckles, that the "Sandman was a character
  in a series of movies . . . whose soul belonged to the
  devil and [who] . . . went around killing families while
  they slept."

- Petitioner's making a ten-inch long glass shank, pulling
  the shank on a jailer, and threatening to cut the jailer's
  head off.

- Petitioner's making a shank from his toothbrush with a
  lighter.

- Petitioner's involvement in fights with other inmates.

- Petitioner's threatening of multiple guards.

- The frequency with which Petitioner was found possessing a
  weapon and the jailers' need to "shake down [Petitioner's]
  cell . . . on a regular basis" and "account for every
  pencil, every piece of paper."

Dkt. Nos. 31-13, Ex. 173B, at 22-23; 56, at 35-36. Given this
abundance of evidence, the Court declines to find that the
sought information could entitle him to relief.

AO 72A
(Rev. 8/82)

b. Suppression of Information for Brady Claim

As to the jail information underlying a Brady violation, Petitioner's claim is unexhausted. Indeed, Petitioner has asserted a Brady violation in both his state and federal habeas actions. See Dkt. Nos. 18-25, Ex. 110, Claim V ¶ 55, at 27 (asserting that the State suppressed favorable records from the Toombs County Detention Center); 45, Claim II ¶ 40, at 25-26 (stating a Brady claim in regard to evidence during the conviction and sentencing phases). However, in addressing Petitioner's claim, the state habeas court's inquiry focused on "records from the Toombs County Detention Center, which show Petitioner was caught with a weapon eight times." Dkt. No. 31-12, Ex. 173A, at 13. Ultimately, the Court found that this claim—somewhat distinct from the claim asserted presently about the general conditions of the facility—suffered from a procedural default. Id. at 14. After a thorough review of the record, the Court finds no transparent assertion of a Brady violation based upon nondisclosure of jail information related to Petitioner's escape. Therefore, a Brady claim premised upon this information is unexhausted.

Even assuming that the Brady claim is exhausted, the Court would still deny Petitioner's motion for discovery on that basis. As already discussed, a Brady claim requires that the prosecution suppressed material information, disclosure of which

24

would have created a reasonable probability of a different result. For reasons already discussed, the sought-after evidence would not have mitigated the escape, nor could it have counteracted the other facts from which the jury could have inferred future dangerousness. Therefore, no good cause for discovery under a Brady claim would be shown.

### 3. Exhausted Claim Related to the Jail's Construction

#### a. Exhaustion Inquiry

As opposed to the other claims, Petitioner's claim based upon ineffective assistance of counsel has been exhausted, as admitted in Respondent's Answer. Dkt. No. 46, at 16-17. Petitioner asserted a Strickland claim in the state and federal habeas actions based upon trial counsel's failure "to conduct an adequate investigation into the circumstances surrounding Petitioner's escape from Toombs County Detention Center, which would have uncovered readily available and compelling evidence which would have mitigated the escape." Dkt. Nos. 18-25, Ex. 110, Claim III ¶ 39, at 15; 45, Claim I ¶ 25, at 10. Indeed, in the motions hearing, the parties disputed whether the information was relevant to Petitioner's Strickland claim, and the court ultimately concluded that the evidence would be irrelevant to Petitioner's action. Dkt. No. 16-29, Ex. 84, at 39, 42-45. Then, in deciding each of Petitioner's claims, the state habeas court conducted a thorough review of all his bases

for ineffective assistance of counsel. Dkt. Nos. 31-12, Ex. 173A, at 15, 21-83; 31-13, 173B, at 84-110. This necessitated a discussion of counsel's investigation of Petitioner's behavior in the Toombs County Detention Center. Dkt. Nos. 31-12, Ex. 173A, at 36-38, 49-50, 55; 31-13, Ex. 173B, at 103-04. Ultimately, the court denied Petitioner's Strickland claim based upon the detention center and other background records. Dkt. No. 31-12, Ex. 173A, at 55, 60. Therefore, the Court finds that the Strickland claim, in regard to the jail information, was fairly presented and decided by the state habeas court.

b. Good Cause for a Strickland Claim

Despite Petitioner's exhaustion of this claim for ineffective assistance of counsel, the Court cannot conclude that discovery would demonstrate that Petitioner is entitled to relief under Strickland's burdensome standard. For reasons previously discussed, trial counsel's inquiry into the facility's condition and other circumstances surrounding Petitioner's escape would not have, with reasonable probability, produced a different result. A jailer's negligence is not a defense to escape, and there were several bases to infer future dangerousness and reach Petitioner's sentences. Therefore, based on the foregoing review of the asserted claims and conclusion that they are unexhausted or without merit,

AO 72A
(Rev. 8/82)

Petitioner's request for inspection of the Toombs County Jail and its records is without merit.

## III. Conclusion

For the aforementioned reasons, Petitioner's Motion for Leave to Conduct Discovery is **DENIED**.  Dkt. No. 59.


**SO ORDERED**, this 24TH day of February, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)