# In the United States District Court
# for the Southern District of Georgia
# Statesboro Division

JERRY SCOTT HEIDLER,

    Petitioner,

    v.

    GDCP WARDEN,

    Respondent.

No. 6:11-CV-109

## ORDER

Petitioner Jerry Scott Heidler's Third Amended Petition for Writ of Habeas Corpus is before the Court. Dkt. No. 124. It has been fully briefed and is ripe for review. For the reasons below, Mr. Heidler's petition is **DENIED**.

## BACKGROUND

## I.   Mr. Heidler's Crimes[1]

The Georgia Supreme Court summarized Mr. Heidler's crimes as follows:

> Danny and Kim Daniels lived in the town of Santa Claus in Toombs County[, Georgia] with their seven children, three of whom were foster children. Heidler's sister was in the Daniels' care as a foster child for 45 days in 1995, and it was then that he began to frequent the house and occasionally to stay there overnight. Months before the murders, Mr. Daniels noticed that Heidler, 20 years old at the time, was beginning to develop a relationship

---

[1] The factual findings of both the state habeas court and Supreme Court of Georgia are presumed to be correct unless they are rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Rolling v. Crosby, 438 F.3d 1296, 1301 (11th Cir. 2006) (per curiam).

with his 16 year old daughter, Jessica. He had a conversation with Heidler, after which Heidler stopped visiting the Daniels' home.

At approximately 5:00 a.m. on December 4, 1997, the police in Bacon County[, Georgia] found three young girls on the street in their nightclothes. The girls said they had been kidnapped from the Daniels' house in Toombs County by a man they knew as Scott Taylor, who drove them to Bacon County in a white van. The police subsequently learned from DFCS [Division of Family and Child Services] that "Scott Taylor" was actually Heidler. The ten-year-old victim told the police that Heidler sexually assaulted her in the van while in Toombs County. This was corroborated by evidence of physical trauma to the child and by DNA testing. The eight-year-old victim told the police that she witnessed the sexual assault. From a photographic lineup, each of the three girls separately identified Heidler as the kidnapper.

Toombs County police officers went to the Daniels' house, where they found the bodies of the four victims. Bryant Daniels, eight years old, was found lying on his bed face-down, where he died from massive head trauma caused by a close-range shotgun blast. Both Mr. and Mrs. Daniels were found lying in their bed, each having been killed by multiple shotgun blasts. The body of Jessica Daniels also was found lying in the master bedroom, near a doorway that led into the hallway. She had been killed by a close-range shotgun blast to the back of her head. A Remington 1100 semi-automatic shotgun was missing from Mr. Daniels' gun cabinet, the door to which was open. Seven spent shotgun casings were found throughout the house. A firearms expert testified that the Remington 1100 shotgun holds six shotgun shells, so the shooter must have reloaded at least once. A neighbor heard, at 1:45 a.m., noises that could have been shots and the police determined that the assailant entered the house by using a ladder to climb through a bathroom window. A fingerprint lifted from this window matched Heidler's fingerprint. DNA taken from saliva on a cigarette butt found on the floor in the house matched Heidler's DNA.

After dropping the girls off in Bacon County, Heidler went to his mother's house where he slept and played video games with his brother. Heidler asked his brother

if he had ever killed anyone, and his brother said no. Heidler then said that killing "gives you a rush, makes you want to go out and kill more people." After his arrest, Heidler confessed to the crimes. He told the police that he threw the shotgun into a river and the kidnapped girls confirmed this assertion.

Heidler v. State, 273 Ga. 54, 58-59 (2000).

## II. Mr. Heidler's Jury Trial

After a jury trial in the Superior Court of Walton County, Georgia (the "trial court"), Mr. Heidler was convicted of four counts of malice murder, three counts of kidnapping, one count of kidnapping with bodily injury, one count of aggravated sodomy, one count of aggravated child molestation, one count of child molestation, and one count of burglary. Dkt. Nos. 12-7 at 108-16; 12-8 at 1-2. During the trial's sentencing phase, the jury found that aggravating circumstances existed and recommended the death penalty for each of the four malice murder counts. Dkt. No. 12-8 at 13-16. In September 1999, the trial court sentenced Mr. Heidler to death for each of those four counts. Id. at 18-25. The trial court also sentenced Mr. Heidler to two consecutive life terms for aggravated sodomy and kidnapping with bodily injury, thirty years (consecutive) for aggravated child molestation, and twenty years (consecutive) for each of the remaining counts. Id. at 26.

## III. Mr. Heidler's Direct Appeal

Mr. Heidler first filed a motion for new trial, which he later amended. Id. at 41-42, 55-56. Following a hearing, that motion was

denied. Id. at 44-48; Dkt. No. 12-9 at 1-14. Then, Mr. Heidler appealed his case to the Supreme Court of Georgia. There, the Supreme Court of Georgia affirmed Mr. Heidler's death sentences, reversed Mr. Heidler's sentence for aggravated child molestation (finding that it merged into the aggravated sodomy count), and affirmed the remainder of Mr. Heidler's sentences. Heidler v. State, 273 Ga. 54 (2000); Dkt. No. 15-18. Thereafter, the United States Supreme Court denied Mr. Heidler's petition for writ of certiorari. Heidler v. Georgia, 532 U.S. 1029 (2001), reh'g den'd, 533 U.S. 965 (2001); Dkt. Nos. 15-23; 16-2.

## IV. Mr. Heidler's State and Federal Habeas Proceedings

In November 2001, Mr. Heidler filed a state habeas corpus petition in the Superior Court of Butts County, Georgia (the "state habeas court"). Dkt. No. 16-3. In April 2004, Mr. Heidler amended that petition. Dkt. No. 18-4. In January and May 2006, the state habeas court conducted evidentiary hearings. Dkt. No. 31-12 at 9. In August 2009, the state habeas court denied Mr. Heidler's amended petition. Dkt. Nos. 31-12; 31-13. The Supreme Court of Georgia summarily denied Mr. Heidler's application for a Certificate of Probable Cause to Appeal ("CPC") from the state habeas court's decision. Dkt. No. 31-18.

In October 2011, Mr. Heidler commenced this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Dkt. No. 1. Mr. Heidler amended his petition in April 2012, dkt. no. 45, April 2014, dkt. no. 70, and—for the third and final time—in April 2019, dkt. no. 124.

## LEGAL STANDARD

Mr. Heidler's federal habeas corpus petition was filed after April 24, 1996; therefore, his case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See e.g. 28 U.S.C. § 2254; see also Payne v. Allen, 539 F.3d 1297, 1312 (11th Cir. 2008). AEDPA "greatly circumscribe[s]" this Court's review and makes it "highly deferential to the state courts." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). First, under AEDPA's deferential standard, state court factual determinations are "presumed to be correct" unless the petitioner rebuts them "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also id. § 2254(d)(2) (requiring federal courts to accept state court adjudications unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

Second, state court legal determinations will be accepted unless they "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "[A] state prisoner must show

that the state court's ruling on the claim being presented in federal court was so lacking in justification that [it constituted] an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" among jurists. Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." Loggins v. Thomas, 654 F.3d 1204, 1220 (11th Cir. 2011); see also Hill v. Humphrey, 662 F.3d 1335, 1347 (11th Cir. 2011) (en banc); Bobby v. Dixon, 565 U.S. 23, 32-33 (2011) (per curiam).

Finally, when filing a 28 U.S.C. § 2254 habeas petition, "generalized allegations are insufficient." Hittson v. GDCP Warden, 759 F.3d 1210, 1265 (11th Cir. 2014). Instead, "petitioners must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). Specifically, petitioners are required to (1) "specify all the grounds for relief available to the petitioner" and (2) "state the facts supporting each ground." 28 U.S.C. § 2254, Rule 2(c).[2]

---

[2] In other words, habeas petitions must contain "'fact pleading' as opposed to 'notice pleading.'" Hittson, 759 F.3d at 1265. Fact pleading is required, in part, because "[u]nlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards." Id. at 1265 n.63 (citation omitted).

## DISCUSSION

As an initial matter, when the state's highest court issues an unexplained, summary decision on appeal of a reasoned lower court decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." _Wilson v. Sellers_, 138 S. Ct. 1188, 1191 (2018).

Here, Mr. Heidler applied to the Georgia Supreme Court for a CDC after the state habeas court denied his Amended Petition for Writ of Habeas Corpus. Dkt. No. 31-15. The Georgia Supreme Court then summarily denied Mr. Heidler's CPC application. Dkt. No. 31-18. Therefore, this Court presumes that the Georgia Supreme Court's summary denial adopted the state habeas court's reasoning, _Raulerson v. Warden_, 928 F.3d 987, 996 (11th Cir. 2019). As such, this Court will "look through" the Georgia Supreme Court summary denial and focus on the reasonableness of the state habeas court's decision even though it was not the last state court decision on the merits. 28 U.S.C. § 2254(d).

## I.  Mr. Heidler's _Strickland_ Claims

Mr. Heidler argues that he is entitled to _de novo_ review of the claims set forth in Part IV.B of his Brief in Support, dkt. no. 127 at 75-117, because the state habeas court's decision relied upon unreasonable factual and legal determinations. _Id._ at 11.

However, this Court finds the contrary to be true: the state habeas court's decision relied upon reasonable factual and legal determinations. Therefore, Mr. Heidler is not entitled to *de novo* review. Instead, this Court applies the following standard:

To allege a successful ineffective assistance of counsel claim (a Strickland claim), a defendant must establish (1) that his trial counsel's "performance was deficient, and [(2)] that the deficiency prejudiced [his] defense." Wilson v. Warden, Georgia Diagnostic Prison, 898 F.3d 1314, 1322 (11th Cir. 2018) (second alteration in original) (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003)). To satisfy the first prong—deficient performance— "a defendant must show that his counsel's conduct fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." Johnson v. Upton, 615 F.3d 1318, 1330 (11th Cir. 2010)(quoting Bobby v. Van Hook, 558 U.S. 4, 7 (2009)) (internal citations omitted).

However, judicial review of a defense attorney's performance is "highly deferential—and doubly deferential when it is conducted through the lens of federal habeas." Yarborough v. Gentry, 540 U.S. 1, 6 (2003). First, as a general principle, "[j]udicial scrutiny of counsel's performance must be highly deferential." Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333 (11th Cir. 2013). Then, "[w]hen we layer the deferential lens of

§ 2254(d) atop that first level of deference, the . . . result is [a] doubly deferential review of counsel's performance." Id. (internal quotations omitted); Strickland v. Washington, 466 U.S. 668, 689 (1984).

Comparatively, determining the second prong of the test—whether an attorney's deficient performance resulted in prejudice to the defendant—is, "in the end, a legal [question]." Evans, 703 F.3d at 1334. Answering this legal question requires no underlying deference (apart from AEDPA deference). Id. A defendant has been prejudiced when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. As the Supreme Court noted in Harrington v. Richter, 562 U.S. 86 (2011):

> This does not require a showing that counsel's actions more likely than not altered the outcome, but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable.

Id. at 111-12 (internal quotation marks and citations omitted).

For the reasons provided below, this Court denies all of Mr. Heidler's Strickland claims.

AO 72A
(Rev. 8/82)

## A. Mr. Heidler's <u>Strickland</u> Claims Relating to Evidence regarding His Mental Health

First, Mr. Heidler finds fault with Part III.D.2.d.2. of the state habeas court's decision. There, the state habeas court discussed Mr. Heidler's trial counsel's investigation of his background and found the following:

> Palmer [one of Mr. Heidler's trial counsel] testified that they hired an investigator, Mr. Gillis, whom they used to track down Petitioner's friends in Alma and Baxley and a few family members. Unfortunately, Petitioner's friends were "criminals, thugs" and "dopers" that were currently in jail and were not helpful to Petitioner's case. . . . Palmer went on to testify that in her efforts to locate mitigating witnesses, "I drove up and down the dirt roads and went to the jails and went to the DFACS and went to the Juvenile Court and went up and down the street where he lived . . . I'm the one who went door to door and around the community and at the convenience store. I did all that."

Dkt. No. 31-12 at 38. Mr. Heidler also argues that according to Ms. Palmer's own billing records, she only spent one day driving "up and down dirt roads looking for witnesses," and that her one day spent searching for witnesses was only four days prior to the start of the evidentiary portion of the guilt-innocence phase of trial. <u>Id.</u> at 100. Second, Mr. Heidler argues that Mr. Gillis only worked on the case for one day for a total of 5.5 hours, and so the sate habeas court erroneously credited defense counsel with hiring him. Dkt. No. 127 at 99.

Importantly, Mr. Heidler has not shown that either of these factual findings by the state habeas court are incorrect or

unreasonable through clear or convincing evidence. See 28 U.S.C. § 2254(e)(1). After a review of record, it appears that the state habeas court simply summarized and quoted Ms. Palmer's testimony. Moreover, it is unclear how the state habeas court was incorrect when it credited the defense counsel with hiring Mr. Gillis when they did, in fact, hire him. For example, Mr. Heidler does not argue that the state habeas court credited such hiring to an unreasonable degree, merely that it credited defense counsel at all.

Further, Ms. Palmer's testimony at the state habeas evidentiary hearing belies Mr. Heidler's reliance on Palmer's billing records as conclusive proof of the extent of her investigatory efforts. There, she testified that she thought "she did a lot more work" than the billing records document. Dkt. No. 19-4 at 40-41. Even though Palmer also testified that she "tried" to document witness interviews in her billing records, that does not show that the state habeas court erroneously relied on Palmer's testimony regarding the extent of her efforts. Finally, even if Palmer did only search for witnesses on that one day, the state habeas court did not make an unreasonable determination of fact by quoting her testimony that she searched for witnesses. Accordingly, this first contention fails.

Second, Mr. Heidler contends that the state habeas court erroneously believed Mr. Heidler's defense counsel, Michael

Garrett, when he testified that "his notes indicate he spoke with Mr. George Dykes . . . regarding Petitioner's need for mental health treatment." Dkt. No. 31-12 at 43. Mr. Heidler argues that "[t]he record does not establish that Mr. Garrett had any contact with Mr. Dykes and [that] Mr. Garrett's testimony referring to Mr. Dykes as a female corroborates his recollection that he did not speak with Mr. Dykes." Dkt. No. 127 at 101.

Mr. Heidler fails to prove these claims by clear and convincing evidence. For example, Mr. Heidler did not show that Mr. Garrett did not testify that his notes indicated that he spoke with Mr. Dykes, nor did he show that Mr. Garrett did not, in fact, speak with Mr. Dykes. Finally, Mr. Heidler did not show that the state habeas court unreasonably credited Mr. Garrett's testimony regarding his interpretation of his own notes. Accordingly, this argument also fails.

Third, Mr. Heidler argues that the record does not support the state habeas court's determination that Palmer "requested and received records from the Detention Center as late as June 1999, three months before the trial." Id. at 101-102 (quoting dkt. no. 31-12 at 4. Mr. Heidler asserts that the state habeas court relied on a letter dated June 15, 1999, from Palmer to Garret that states, "Enclosed please find a copy of the *record* I have obtained from the jail in Toombs County." Dkt. No. 30-8 at 44 (emphasis added). Notably, the letter's subject line reads: "Re: State vs. Jerry

Scott Heidler, Toombs County Detention Center Records." Id. This letter shows that the state habeas court's finding that Palmer received at least one record from the Toombs County Detention Center (i.e., the jail) in June 1999 is supported by the record. The fact that the letter uses the singular "record" instead of the plural "records" does not show that the state habeas court's finding that "records" were received in June 1999 was unreasonable (nor does it show that the ultimate decision was based on this determination of fact).[3] Accordingly, this argument, like the others before it, fails.

Fourth, Mr. Heidler argues that the state habeas court's finding that "'the trial attorney files clearly prove that trial counsel did obtain [the Toombs County Detention Center] documents' was critical to the court's conclusion that counsel did not perform deficiently in failing to provide these records to the mental health experts . . . [but such finding] has no meaningful record support." Dkt. No. 127 at 102 (quoting Dkt. No. 31-12 at 56) (alteration by Mr. Heidler). This argument lacks merit. The state habeas court cites to numerous locations in the record to support its finding that "the trial attorney files clearly prove that trial

---

[3] Considering the topic of the letter was "Toombs County Detention Center Records," the use of the singular "record" could have been a typographical error. Even if Mr. Heidler clearly and convincingly showed that only a single record was received in June 1999, this does not make the use of the plural by the state court unreasonable because records were received prior to June (thus the June record combined with the earlier records constitutes "records").

counsel did obtain these documents and, once again, trial counsel testified that all records regarding Petitioner were turned over to the mental health experts." Dkt. No. 31-12 at 56. In short, Mr. Heidler's conclusory argument is insufficient to meet his burden to successfully allege this claim. Accordingly, it fails.

Fifth, Mr. Heidler contends that the state habeas court was "unreasonable" in blaming any deficiencies in trial counsel's investigation into Mr. Heidler's past "on Mr. Heidler." Dkt. No. 127 at 102. In support of this contention, Mr. Heidler highlights the state habeas court's finding that Mr. Garrett "testified that when he met with [Mr. Heidler] he 'couldn't communicate with him at all' and gathered very little information from [Mr. Heidler] due to [Mr. Heidler's] unwillingness to cooperate." Dkt. No. 31-12 at 36. Mr. Heidler argues that the state habeas court's use of the word "unwillingness" shows that the state habeas court found (a) that Mr. Garrett blamed Mr. Heidler for being unwilling to cooperate and (b) that Mr. Garrett believed "Heidler was being obstructive on purpose." Dkt. No. 127 at 103.

The state habeas court pointing out that Mr. Heidler was unwilling to cooperate does not mean that it "blam[ed] any deficiencies on the investigation on Mr. Heidler." Id. at 102. Here, the context in which the state habeas court uses the word "unwillingness" illustrates that the court used the term to characterize Mr. Garrett's testimony: that he was unable to gather

information from Mr. Heidler because of Mr. Heidler's unwillingness to cooperate. Thus, a fair reading of the state habeas court's decision shows that it did not identify or blame any deficiencies in trial counsel's performance on Mr. Heidler's lack of cooperation and forthrightness. Rather, the record reflects that the state habeas court thoroughly detailed Mr. Heidler's trial counsel's efforts to investigate mitigating evidence despite Mr. Heidler's lack of assistance (whether willful or not). Such a determination is reasonable, and Mr. Heidler fails to show otherwise by clear and convincing evidence. Accordingly, this claim fails.

Sixth, Mr. Heidler argues that the state habeas court made several unreasonable errors in its "rejection of Dr. Faulk's testimony and its dismissal of the Pineland records." Id. at 105. Mr. Heidler alleges that in so doing, the state habeas court "wholly discounted important pieces of evidence" presented before it. Id. at 104. However, the state habeas court determined that the records Mr. Heidler now claims are "important pieces of evidence" were, in fact, cumulative evidence that trial counsel did not need to present to the jury. Dkt. No. 31-12 at 59 ("Trial counsel [was] not ineffective for not presenting cumulative evidence."). Such a conclusion is reasonable, and Mr. Heidler has not presented clear and convincing evidence to the contrary. See Reaves v. Sec'y, Fla. Dep't of Corr., 872 F.3d 1137, 1157 (11th

Cir. 2017) (holding that "counsel's failure to present cumulative evidence is not ineffective assistance."). Accordingly, this claim fails.

Finally, Mr. Heidler argues that the state habeas court erroneously found that Mr. Heidler hearing a baby crying was the only indication in the record of Mr. Heidler hallucinating, when in fact the record also states that Mr. Heidler "[a]lleges that he's been having flashback of the 'death,'" dkt. no. 127 at 105 (quoting dkt. no. 21-17 at 34). The state habeas court's finding that an alleged flashback is not a report of a hallucination is not unreasonable. Additionally, even if it were unreasonable for the state habeas court to find that Mr. Heidler's self-reported flashback was not a report of a hallucination, the court's bottom line ruling on Mr. Heidler's ineffective assistance of counsel claims was not based on this determination of fact. 28 U.S.C. § 2254(d)(2). Since Mr. Heidler has not shown that this factual finding was unreasonable or that the state habeas court based its decision on this factual finding, this claim fails.

This Court now turns to the remainder of claims set forth in part IV.B of Mr. Heidler's brief. Here, Mr. Heidler argues that because of his "trial counsel's deficient performance, the expert opinions in both the guilt and sentencing phases of trial were profoundly misleading and inaccurate." Dkt. No. 127 at 76. Mr.

Heidler argues that his trial counsel were deficient in three respects:

(1) they "failed to obtain relevant documents that would have shown that Mr. Heidler in fact suffered from a psychosis-inducing thought disorder and not merely a personality disorder," id.;

(2) they failed to contact witnesses that witnessed Mr. Heidler's psychotic behavior, id. at 92-94; and

(3) they "failed to take an active role in highlighting and curating the extensive records reflecting Mr. Heidler's many years of debilitating mental illness to focus the experts' attention on the more relevant portions of the records they provided to the experts," id. at 76.

Mr. Heidler claims that as a result of these deficiencies, his mental health expert at trial, Dr. Maish, and the three mental health experts retained by the trial court—Dr. D'Alesandro, Dr. Ifill, and Dr. Kuglar—did not diagnose Mr. Heidler with a thought disorder but misdiagnosed him as having one or more personality disorders.[4]

Regarding the investigation of records, Mr. Heidler primarily argues that his trial counsel were deficient by failing to obtain records from Pineland Community Mental Health Center regarding Mr. Heidler's treatment there while he awaited trial. He also argues that his trial counsel did not obtain a complete set of medical

---

[4] Mr. Heidler appears to make these claims with the operating assumption that this Court can review them de novo; however, as stated before, this Court's review of Mr. Heidler's Strickland claims are constrained by the standards established by AEDPA. Notably here, Mr. Heidler's arguments do not identify how the state habeas court's decision (or reasoning) was unreasonable.

records from Toombs County Detention Center. Mr. Heidler further argues that they did not speak with Nurse George Dykes from the Toombs County Detention Center—who treated Mr. Heidler and recommended on several occasions that Mr. Heidler be given mental health treatment—or Dr. David Faulk—who evaluated Mr. Heidler at Pineland and prescribed him with Haldol, an anti-psychotic medication.

Regarding his claim that trial counsel failed to contact witnesses, Mr. Heidler argues that his trial counsel failed to locate and interview "numerous" individuals that witnessed Mr. Heidler experience auditory and visual hallucinations and could have testified to the same. Mr. Heidler identifies two such individuals, both of whom interacted with Mr. Heidler on a single occasion when he was twelve.

Finally, regarding the curation of the voluminous records, Mr. Heidler argues that "[n]umerous documents reflected the severity of Mr. Heidler's mental illness, long before he was arrested and charged with the murders." Dkt. No. 127 at 94. Mr. Heidler highlights several records and the information they allegedly contain before arguing that "it does not appear that [his trail counsel] were aware of the information contained" therein. Id. at 95. Mr. Heidler concludes his arguments on this point by claiming his trial counsel were deficient because they

failed to provide the mental health experts with "a roadmap of what to review." Id. at 96.

The record tells a different story. The state habeas court concluded that "trial counsel's investigation was not deficient as they conducted an exhaustive investigation of Petitioner's background by interviewing family members, teachers, friends, DFACS caseworkers, and Petitioner's juvenile probation officer." Dkt. No. 31-12 at 65-66. The court reasoned that the record made "clear that trial counsel gathered voluminous documents from the various schools, including the psycho-educational centers Petitioner attended, the numerous mental health centers records, DFACS records, Petitioner's Toombs County Detention Center records and medical records." Id. at 66. In its Order, the state habeas court thoroughly described the record evidence above to support its decision and findings. See id. at 35-66.

Moreover, the state habeas court's thorough discussion of Mr. Heidler's trial counsel's investigatory efforts show that the state habeas court's decision was not unreasonable, and Mr. Heidler fails to show otherwise by clear and convincing evidence. Merely identifying documents and witnesses that could have supported Mr. Heidler's case is insufficient to show that his trial counsel's investigation was deficient or that the state habeas court's decision regarding the same was unreasonable. See Reaves, 872 F.3d at 1157 ("[T]he fact that other witnesses could have been called

or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel.").

Of note, Mr. Heidler supports his argument that trial counsel did not sufficiently curate the records they provided to the mental health experts by relying on cases that are not "clearly established Federal law" under AEDPA, i.e. they are not United States Supreme Court holdings. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (reaffirming that the "clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision") (internal quotations and citations omitted); see also Williams v. Taylor, 529 U.S. 362, 412 (2000). For this additional reason, Mr. Heidler has not shown that the state habeas court's adjudication of this claim violated 28 U.S.C. § 2254(d)(1), 28 U.S.C. § 2254(d)(2), or both. Accordingly, this last claim, like the others before it, fails.

For the above reasons, Mr. Heidler's Strickland claims relating to evidence regarding his mental health are denied.

**B.** **Strickland Claims regarding Trial Counsel's Mental Health Defenses at Trial**

In his Brief in Support, dkt. no. 127, Mr. Heidler claims that his trial counsel were deficient because they failed to narrow down their mental health defenses at trial "to focus the issue of Mr. Heidler's mental health on the sole question that was at issue during the guilt phase of the trial—whether Mr. Heidler was guilty but mentally ill." Id. at 119. This claim fails for two reasons. First, Mr. Heidler did not raise it in his Third Amended Petition, dkt. no. 124. Second, it is procedurally defaulted. Regarding the first reason, Rule 2(c) of the Rules Governing Section 2254 Cases requires the operative petition, here the Third Amended Petition, to: "(1) specify all grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground." 28 U.S.C. § 2254, Rule 2(c). Mr. Heidler has done neither with respect to this claim.

Regarding the second reason—procedural default—Mr. Heidler never raised this specific claim before the state habeas court or in his application to the Georgia Supreme Court for a CPC. As a result, this claim was not "adjudicated on the merits in the State court proceedings" within the meaning of 28 U.S.C. § 2254(d). Thus, it is procedurally defaulted. See, e.g., Hittson, 759 F.3d at 1232 n.23 (finding that "[b]ecause Georgia prisoners are required to apply for a CPC before they have exhausted their state remedies"

several of the petitioner's claims not included in the petitioner's CPC application were procedurally defaulted).

Moreover, the State has not expressly waived this defense. Heidler's argument, that the State "expressly and affirmatively stated that the claims [Mr. Heidler] now asserts are unexhausted were in fact reviewable," dkt. no. 130 at 7, is conclusory and unsupported by the record. As the record shows, Heidler first raised this claim in his Brief in Support, dkt. no. 127, which precluded the State from arguing that the claim was unexhausted until now. Additionally, Mr. Heidler has neither shown nor attempted to show cause for the default or any resulting prejudice (or that a miscarriage of justice would occur). For the above reasons, Mr. Heidler's _Strickland_ claims regarding his trial counsel's mental health defenses at trial fail and are denied.

### C.  Trial Counsel's Investigation and Presentation of Mitigating Evidence

Mr. Heidler's next _Strickland_ claim argues that the state habeas court unreasonably found that his trial counsel were not deficient in their investigation or presentation of mitigating evidence. Mr. Heidler claims that "the state habeas court had an overly inflated view" of trial counsel's work. Dkt. No. 127 at 141. This Court has already rejected that argument. The state habeas court determined that trial counsel did indeed hire an investigator, Frank Gillis, who found witnesses and conducted

interviews. Additionally, according to her testimony, Ms. Palmer's billing records did not reflect the true extent of her investigatory attempts to discover mitigating evidence. Neither of these factual findings by the state habeas court were unreasonable nor has Mr. Heidler shown by clear and convincing evidence that such testimony and evidence, or any reliance upon it, was erroneous.

Next, Mr. Heidler claims that "the state habeas court's reading of the evidence that the defense did present at trial has little correspondence to the actual testimony jurors heard." Id. Mr. Heidler specifically finds fault with the state habeas court's factual determination that Mr. Heidler's trial counsel presented evidence at sentencing that Mr. Heidler suffered from abuse, neglect, and mental illness. Mr. Heidler contends that, in fact, "very little was shown about Mr. Heidler's challenging childhood." Id. Heidler also argues that the state habeas court unreasonably found that Heidler's trial counsel presented witness testimony about his "troubled childhood of neglect and abuse," dkt. no. 127 at 141 (quoting Dkt. no. 31-12 at 50), when, according to Heidler, his trial counsel merely presented testimony of *allegations* of abuse since the members of Heidler's family who testified denied that any abuse occurred.

These arguments are not enough to satisfy Mr. Heidler's burden, at this stage, under AEDPA. He fails to show that this

AO 72A
(Rev. 8/82)

factual finding by the state habeas court was unreasonable. Moreover, even if he did show that these factual findings were unreasonable, Mr. Heidler does not show that the state habeas court based its decision on these findings. First, testimony stating that there were allegations of abuse is circumstantial evidence of abuse. Thus, the trial court's finding that witnesses testified about abuse is not unreasonable. Second, the state habeas court listed numerous pieces of mitigating evidence that Mr. Heidler's trial counsel presented in its decision that Mr. Heidler's trial counsel were not deficient in their investigation or presentation of mitigating evidence. Thus, even if the state habeas court did slightly mischaracterize the evidence of allegations of abuse as evidence of abuse, the record does not show that the state habeas court's ultimate decision was based on this finding of fact (as it must under 28 U.S.C. § 2254(d)(2)). Accordingly, these arguments fall short and fail.

Third, Mr. Heidler argues that the state habeas court's finding that his "[t]rial counsel cannot be held responsible for [his] family's reticence in revealing shameful family secrets," dkt. no. 31-12 at 62, was unreasonably wrong because "trial counsel are responsible for the failure to conduct an adequate investigation," dkt. no. 127 at 142. In other words, Mr. Heidler argues that his trial counsel performed deficiently because they

did not timely investigate mitigating evidence and they did not adequately interview Mr. Heidler's family members. See id. at 143.

Mr. Heidler does not meet his burden with this argument. While the record does contain evidence showing that Ms. Palmer only interviewed mitigation witnesses four days prior to the start of the guilt-innocence phase of trial, the record also shows that Mr. Heidler's "counsel [began] work on obtaining mental health-related documents early in the representation." Dkt. No. 127 at 143 n. 57. Obtaining those documents "early in the representation," necessarily involved speaking with Mr. Heidler's family early in the investigation. Ms. Palmer testified that she talked with Mr. Heidler's family members, who told her that "Mr. Heidler has been in and out of foster care," which then prompted her to speak with DFACS, from whom she obtained records. Dkt. No. 19-3 at 63. Thus, the record shows that Ms. Palmer spoke with Mr. Heidler's family members, located witnesses, and found records within a timely manner.

Moreover, Mr. Heidler has not shown that the state habeas court's decision on this matter was unreasonable. Instead, Mr. Heidler's arguments are colored by the "distorting effects of hindsight." Strickland, 466 U.S. at 689. Such arguments are not enough to meet his burden under AEDPA. As this argument fails.

Mr. Heidler's remaining arguments on this claim focus on the second prong of a Strickland claim: prejudice. Since this Court

AO 72A
(Rev. 8/82)

finds that Heidler falls well short of his burden of proof under AEDPA with respect to first prong of a <u>Strickland</u> claim (deficiency), we do not need to reach an analysis involving the second prong.

For the above reasons, Mr. Heidler's overall claim that the state habeas court unreasonably found that his trial counsel were effective in their investigation of mitigating evidence fails. It is denied.

### D.   Mr. Heidler's Escape from Toombs County Detention Center

This Court has already rejected this claim when it denied Mr. Heidler's motion for an evidentiary hearing. <u>See</u> Dkt. No. 97. There, this Court determined that Mr. Heidler's ineffective assistance of counsel claim "stemming from a conflict of interest" lacked merit. <u>Id.</u> at 29. This Court also found that "there is no need to consider post-conviction counsel's ineffectiveness . . . because post-conviction counsel could not be deemed ineffective for failing to raise a claim that the Court has determined lacks any merit." <u>Id.</u> at 29-30. Although Mr. Heidler requests that this Court revise that order, dkt. no. 130 at 31, this Court has no reason to do so. Mr. Heidler's claim is still without merit. Accordingly, this claim is denied.

### E. Trial Counsel's *Voir Dire*

Mr. Heidler's next Strickland claim argues that his trial counsel were deficient by "conduct[ing] an anemic *voir dire* . . . that ignored critical and specific issues." Dkt. No. 127 at 165. Mr. Heidler identifies the following ways that his trial counsel were allegedly deficient, they:

(1) "asked virtually no case-specific questions of venirepersons beyond a general inquiry into their willingness to listen to the testimony of a psychiatrist or psychologist," id. at 166;

(2) failed "to determine which venirepersons held harmful (and potentially disqualifying) views, and which held helpful views, on issues germane to the trial," id. at 167;

(3) "failed to test the jurors' ability to consider all sentencing options in a case with facts similar to those alleged in Mr. Heidler's," id. at 169; and

(4) "neglected to object to the prosecutor buttonholing jurors into stating their ability to consider all three sentences," id. at 170.

This Court will review the merits of this claim.[5] Further, the Court is not constrained by AEDPA because the state habeas court did not (and could not) rule on this claim. Nevertheless, this claim fails because Mr. Heidler has not met his burden of showing deficient performance under Strickland's highly deferential standard of review. See 466 U.S. at 689 (recognizing that

---

[5] Although Mr. Heidler did not raise this claim in the state habeas court or in his application for CPC to the Georgia Supreme Court, the State has expressly waived its procedural bar defense when it recognized in its Answer to Mr. Heidler's Third Amended Petition that this claim is "properly before this Court for review" and is "reviewable under § 2254(d)." Dkt. No. 128 at 18, 20-21.

"[j]udicial scrutiny of counsel's performance must be highly deferential" and that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Here, Mr. Heidler's trial counsel wrote a very detailed and well researched "Memorandum of Law in Support of Adequate *Voir Dire*." Dkt. Nos. 12-5 at 98-109; 12-6 at 1-6. That memorandum touched on topics including:

(1)   that a juror who will automatically impose the death sentence must be excused for cause;

(2)   that jurors must be willing to consider mitigating evidence;

(3)   that Mr. Heidler's trial counsel must be allowed "to conduct a meaningful *voir dire*," dkt. no. 12-5 at 101, by asking both "open-ended" and "case-specific questions," id. at 102, 109;

(4)   that the trial court should act to mitigate the fact that "the process of death qualification itself has a prejudicial effect" on jurors, id. at 103; and

(5)   that the trial court should "refrain from making any comments to the prospective jurors that would in any way tend to lessen the responsibility that each juror would be required to shoulder" at the penalty phase (if reached), id. at 108.

Given, then, the strong presumption in favor of effective performance and the fact that Mr. Heidler's trial counsel were acutely aware of the importance and strategic nature of *voir dire*, Mr. Heidler has not met his burden of showing deficient performance. Instead, Mr. Heidler's arguments are grounded in "the

distorting effects of hindsight," which this Court must make "every effort . . . to eliminate." Strickland, 466 U.S. at 689. The mere fact that his trial counsel did not probe the jury further on these topics does not mean that trial counsel's decisions were "not part of a reasonable trial strategy." Dkt. No. 127 at 174; See Brown v. Jones, 255 F.3d 1273, 1279 (11th Cir. 2001) (finding that although trial counsel at a capital trial engaged in limited *voir dire*, the trial counsel "may well have thought it better to avoid any focus on the death penalty . . . because it seems reasonable for trial counsel to want to focus the jury on the idea of the death penalty as little as possible"); Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001) ("Counsel is . . . accorded particular deference when conducting *voir dire*. An attorney's actions during *voir dire* are considered to be matters of trial strategy"; Neill v. Gibson, 278 F.3d 1044, 1055 (10th Cir. 2001) ("Lawyers experienced in the trial of capital cases have widely varying views about addressing [during *voir dire*] the delicate balance between the disqualification of jurors whose personal beliefs prevent them from ever imposing the penalty of death . . . and those who would automatically recommend that sentence if they found the defendant guilty.")). The deference given to an attorney under a Strickland analysis and the presumption that any action (or inaction) by trial counsel during *voir dire* was a strategic decision coupled with Heidler's trial counsel's acute awareness of the importance of

*voir dire*, render Heidler's claim—based solely on his trial counsel's lack of questioning—unsuccessful. It is denied.

### F. Failure to Challenge a Biased Juror

First, this claim is procedurally defaulted because it was not raised in Mr. Heidler's CPC application to the Georgia Supreme Court. See, e.g., Hittson, 759 F.3d at 1232 n.23. Moreover, the State has not expressly waived this defense.[6] Since Mr. Heidler did not raise this claim until he filed his Brief in Support, dkt. no. 127, the State had no opportunity to argue that it was unexhausted until now. Second, Mr. Heidler has not shown cause and prejudice to excuse these procedural defaults, nor has he shown that a miscarriage of justice would result. For these reasons, Mr. Heidler's claim that his trial counsel were ineffective for failing to challenge an allegedly biased juror is procedurally defaulted and, in the alternative, not sufficiently plead under Rule 2(c). Accordingly, it fails and is denied.

### G. Failure to Object to Inadmissible Evidence

Although there are issues of whether these claims are unexhausted and procedurally barred and if so, whether the State expressly waived the defense of exhaustion, the Court need not reach these issues because these claims are not properly before

---

[6] Comparatively, the State expressly recognized Mr. Heidler's *voir dire* claim was properly before the Court. Here, the State did not do so.

the Court because Mr. Heidler does not meet the pleading requirements of Rule 2(c).

Here, like the petitioner in Hittson, 759 F.3d at 1210, Mr. Heidler's claims are not sufficiently plead. In Hittson, the Eleventh Circuit found the following claim to not satisfy Rule 2(c)'s requirements: "[S]tate habeas counsel failed to pursue obvious avenues of investigation, resulting in a failure to raise meritorious and potentially meritorious claims. Ineffective Assistance claims which Mr. Hittson believes are 'substantial' and which have 'some merit' were available to be litigated in state habeas proceedings but post-conviction counsel unreasonabl[y] failed to raise them." 759 F.3d at 1265-66. This claim was found to contain "generalized allegations" that lacked any factual allegations in support. Id. at 1265.

Here, Mr. Heidler's Third Amended Petition sets the following claims: "Counsel failed to object to the admission of several items of evidence and testimony offered by the State during the guilt/innocence and sentencing phases of trial and permitted the jury to receive and consider evidence that was improper, inadmissible, prejudicial, irrelevant, and/or false." Dkt. No. 124 at 22. Such a pleading is quintessentially conclusory.[7] They contain no factual allegations and list generalized reasons that

---

[7] The following claim also fails for the same reason: "Counsel failed to adequately object to and litigate the improper admission of certain evidence, including but not limited to videotapes and photographs." Dkt. No. 124 at 24.

evidence may be improperly admitted. Accordingly, these claims, like those in <u>Hittson</u>, fail to state a claim and are unsuccessful. They are denied.

## H. Failure to Object to Prosecutorial Misconduct

These <u>Strickland</u> claims are also improperly plead. Mr. Heidler's Third Amended Petition alleges that his trial counsel: (1) "failed to adequately object to and litigate improper testimony, including but not limited to testimony that was hearsay, irrelevant, cumulative, outside the personal knowledge of the witness, and testimony that was highly prejudicial," dkt. no. 124 at 25; and (2) "failed to object to improper and prejudicial statements made by the State during opening and closing arguments of both the guilt/innocence and sentencing phases of the trial," <u>id.</u> These broad, generalized claims—which are devoid of supporting facts—are insufficient to satisfy the fact pleading requirements of Rule 2(c). Mr. Heidler cannot amend his Third Amended Petition with arguments and factual allegations contained in his Brief. Therefore, these claims are not properly before the Court and are denied.

## I. Failure to Make Reasonable Efforts to Suppress Mr. Heidler's Statements to Law Enforcement

This claim fails for four reasons. First, Mr. Heidler generally raises these claims in his Third Amended Petition;

however, he provides no factual basis for them.[8] Mr. Heidler did not set forth the specifics of this claim until his Brief in Support, dkt. no. 127. Petitioners cannot use their Brief in Support to bypass pleading requirements. Thus, these claims are not properly before the Court. Second, even if they were, Mr. Heidler did not exhaust these claims because he failed to include them in his application for a CPC to the Georgia Supreme Court. Third, the State has not expressly waived exhaustion with respect to these claims. The State's general statement in its Answer to the Third Amended Petition repeating Mr. Heidler's general statement of these claims is not an express waiver within the meaning of 28 U.S.C. § 2254(b)(3)—especially considering that in its Answer the State "specifically reserve[d] the right to assert procedural default as to any additional claims in response to any additional petition or any brief filed on behalf of Petitioner." Dkt. No. 128 at 18. Moreover, the State raised this defense at the earliest opportunity, which was its Response Brief to the Third Amended Petition, dkt. no. 129. Fourth and finally, Petitioner has not attempted to show cause and prejudice for this failure or that

---

[8] The Third Amended Petition claims that Mr. Heidler's trial counsel "failed to adequately raise and litigate that Petitioner's statement to law enforcement was the result of an illegal arrest and should be suppressed," dkt. no. 124 at 19, and "failed to adequately present information and evidence in pretrial motions and proceedings and at trial relating to Petitioner's allegedly voluntary waive of constitutional rights during interrogation by the police," id. at 19-20. No facts supporting these claims are provided in the Third Amended Petition.

procedural default would result in a miscarriage of justice. For these reasons, this claim fails, and it is denied.

### J. Failure to Adequately Present Evidence and Advocate on Mr. Heidler's Behalf at the Competency Hearing

This claim fails on procedural grounds. Before Mr. Heidler stood trial, the trial court ordered that he be evaluated by multiple, independent mental health professionals to determine whether he was competent to stand trial. After the evaluations were complete, the trial court held a hearing on the issue of Mr. Heidler's competency. Dkt. No. 13-3. The trial judge then determined that Mr. Heidler was competent to stand trial. Dkt. No. 12-7 at 59-60. Now, Mr. Heidler argues that his trial counsel were unconstitutionally deficient because they failed to present certain evidence to the trial court and they did not adequately advocate that he was incompetent before the trial court. However, Mr. Heidler raises this claim for the first time in his Brief in Support, dkt. no. 127. As stated before, procedural default occurs when a petitioner raises a claim for the first time in their brief in support. Doing so also does not meet the requirements of Rule 2(c). For these procedural reasons, this claim fails. It is denied.

## II. Prosecutorial Misconduct During the Guilt-Innocence Phase

Mr. Heidler sets forth numerous claims that the prosecutor acted improperly, violating several constitutional rights. Each of these claims fail for the reason(s) provided below:

## A.   Mr. Heidler's Mental Health Evidence

First, Mr. Heidler alleges several instances of prosecutorial misconduct related to the presentation of mental health evidence at trial. These claims relate to the prosecutor's comments and questions at trial. Specifically, Mr. Heidler argues that the prosecutor intentionally misled the jury by cautioning against using the Diagnostic and Statistical Manual (DSM) to diagnose criminal defendants. This claim, however, was not presented to the state courts on Mr. Heidler's direct appeal nor did he raise it during his state habeas proceedings (including his application for CPC).[9] Therefore, this claim is unexhausted and procedurally defaulted. See, e.g., Hittson, 759 F.3d at 1232 n.23. Second, the state did not expressly waive this defense (because Mr. Heidler raised this claim for the fist time in his Brief in Support).[10] Therefore, the Court cannot consider it. Finally, Petitioner has not shown, nor has he attempted to show, cause and prejudice for

---

[9] The Court notes that although Mr. Heidler did raise certain prosecutorial misconduct claims on direct appeal and in the state habeas proceedings, this specific claim was not one of them because the factual basis for this claim was not presented to any of the state courts. See Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (finding that "the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief").

[10] The Court notes that this claim also does not satisfy the federal habeas pleading requirements because Mr. Heidler does not set forth the factual allegations supporting the broader prosecutorial misconduct claim in which this claim ostensibly falls. Although the Third Amended Petition broadly states that "the prosecution . . . mislead the jury as to the significance and meaning of Petitioner's mental health history," dkt. no. 124 at 35 ¶ 52, such allegation is too generalized and, once again, contains no factual bases—making the claim insufficiently plead.

this failure or that procedural default would result in a miscarriage of justice.

Mr. Heidler's next set of claims regarding his mental health evidence are either precluded from federal habeas review or procedurally defaulted. These claims allege that on cross-examination the prosecutor "further undermined the experts' credibility by falsely alleging that they had not asked the State to supply records for their evaluation and that the State did not even know Mr. Heidler was being evaluated," dkt. no. 127 at 200, and, during closing arguments the prosecutor "falsely argued . . . that the medical records utilized were untrustworthy; that the expert testimony was not evidence; and that the jury was prohibited from considering it," id. at 201.

Regarding Mr. Heidler's claim relating to the cross-examination of the mental health experts are procedurally defaulted. Mr. Heidler claims that the prosecutor unconstitutionally "undermined the [mental health] experts' credibility by falsely alleging that they had not asked the State to supply records for their evaluation and that the State did not even know Mr. Heidler was being evaluated." Dkt. No. 127 at 200. Like many of Mr. Heidler's claims, these claims were not set forth in his application for CPC to the Georgia Supreme Court and for this reason are unexhausted and procedurally barred. Further, the State has not waived this defense because Mr. Heidler did not raise

these specific claims until he argued them in his Brief in support of his Third Amended Petition, dkt. no. 127. In addition, Petitioner has not shown, nor attempted to show, cause and prejudice for this failure or that procedural default would result in a miscarriage of justice.

The claims stemming from the prosecutor's closing arguments at the guilt-innocence phase are precluded from the Court's review. On direct appeal of his conviction, Mr. Heidler alleges that the prosecutor engaged in misconduct when he:

    (a)    "argued that [the mental health experts] did not base their opinions on evidence in the record of the case," dkt. no. 15-11 at 52;

    (b)    "decried the experts' reliance on records that had been sent to them by defense counsel," id.;

    (c)    said these records had not been subject to cross-examination like other evidence in the case, id.; and

    (d)    "comment[ed] upon the defendant's failure [to] produce evidence" relating to the records the mental health experts relied upon," id.

The Supreme Court of Georgia rejected these arguments on the ground that Mr. Heidler did not object to them at trial, "and thus [Mr. Heidler] waived any right to seek a reversal based thereon." See Heidler, 273 Ga. at 61. This holding qualifies as an independent and adequate state ground and thus precludes federal habeas review. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001) (citation omitted). First, the Georgia Supreme Court "clearly and expressly

state[d] that it [was] relying on state procedural rules to resolve the federal claim without reaching the merits of the claim." Id. Second, the decision was on state law grounds and it did not interpret federal law. Id. Finally, the state procedural rule was "adequate" in that it is not "manifestly unfair" in its treatment of Mr. Heidler. Id. Additionally, Petitioner has not shown, nor has he attempted to show, cause and prejudice for this failure (or that procedural default would result in a miscarriage of justice).

Finally, both of these claims are insufficiently plead. The factual basis for these claims were not alleged in Mr. Heidler's Third Amended Petition. Therefore, these claims are unsuccessful.

### B. The Prosecutor's Appeal to Passions and Emotions and Sharing of Personal Belief

Mr. Heidler's claim that the prosecutor improperly employed the "Golden Rule" argument during his closing argument is procedurally defaulted. This claim was not raised in Mr. Heidler's application for CPC to the Supreme Court of Georgia. Further, in its Answer to Mr. Heidler's Third Amended Petition the State expressly argued that this "claim is procedurally defaulted," dkt. no. 128 at 15. Mr. Heidler's only argument on this point is that the State waived this defense; however, the State must do so explicitly, and it has not. See 28 U.S.C. § 2254(b)(3). Finally, Petitioner has not shown cause and prejudice for this failure, nor

has he shown that procedural default would result in a miscarriage of justice. Thus, this claim is procedurally defaulted and fails.

Next, Mr. Heidler claims that the prosecutor acted improperly "by invoking repeated cries for justice for the victims during his guilt-phase closing argument" and by ending "his [closing] argument with a forceful pronouncement of Mr. Heidler's guilt." Dkt. No. 127 at 205-06. These remarks did not deprive Mr. Heidler of a fair trial nor were they improper. Nevertheless, this Court need not reach this issue because the claims are not sufficiently plead. Therefore, they are procedurally defaulted. Specifically, these claims were not plead in Mr. Heidler's CPC application (or at any other stage of the direct appeal or state habeas proceedings). Finally, Petitioner has not shown, nor attempted to show, cause and prejudice for this failure or that procedural default would result in a miscarriage of justice. For these reasons, these arguments fail, and this claim is denied.

C.    **The Prosecutor Misled the Jury on the Burden of Proof**

Mr. Heidler argues that the prosecutor misled the jury on the correct burden of proof by telling the jury to "return to us with the truth" and to "tell us the truth." Dkt. No. 127 at 207 (quoting Dkt. No. 13-14 at 53). Mr. Heidler did not set forth this claim in his Third Amended Petition. Accordingly, it is not properly before the Court. It is denied. See 28 U.S.C. § 2254, Rule 2(c).

**D. The Prosecutor Derided Defense Counsel and Improperly Elicited Incriminating Statements**

Mr. Heidler claims that the prosecutor discredited the defense at trial by "disparag[ing] defense counsel's handling of the expert testimony and underlying records," while "bolster[ing] his own handling of such things." Dkt. No. 127 at 209. He also claims and that the prosecutor improperly used statements made by Mr. Heidler during his mental health examination.[11] These claims are wholly absent from Mr. Heidler's Third Amended Petition. Thus, they are not properly before the Court. As such, this argument, like the ones before it, fails.

For the reasons above, Mr. Heidler's claims regarding prosecutorial misconduct during the guilt-innocence phase of trial are denied.

**III. Prosecutorial Misconduct During the Penalty Phase Closing Argument**

For the reasons below, each of Mr. Heidler's claims regarding the prosecutor's closing arguments at the penalty phase of the trial are denied.

---

[11] This claim does not fit within Mr. Heidler generalized claim in his Third Amended Petition that the prosecutor elicited "false and/or misleading testimony from State witnesses," dkt. no. 124 at 39 ¶ 60. The mental health experts were not state witnesses. Nevertheless, even if this claim could fit within this allegation it would not be sufficiently plead under Rule 2(c).

## A. Expressing Personal Opinion on the Evidence

This claim is wholly absent from Mr. Heidler's Third Amended Petition. Mr. Heidler, of course, cannot amend his Third Amended Petition by adding new claims in his brief. Accordingly, this claim is not properly plead and fails.

## B. Improperly Instructing the Jury

Mr. Heidler's next claim is that the prosecutor's closing argument improperly "limited the scope of what the jury could consider" at the sentencing phase, dkt. no. 127 at 217, by stating:

> [T]his is the time for rational thinking, sound judgment rather than emotion or overwhelming sympathy. This is to decide not again the verdict, not again the issue of mental illness or mental retardation, but what should be done as a penalty for these crimes, what should be done as a punishment to this man.

Dkt. No. 14-11 at 44. The last reasoned decision on this issue was the Georgia Supreme Court's decision on direct appeal. There, the Georgia Supreme Court concluded that "[t]he prosecutor's conduct and argument in the penalty phase were not improper." Heidler, 273 Ga. at 65. Mr. Heidler has not shown how this decision was unreasonable. Thus, Mr. Heidler has not met his burden under AEDPA. Instead, he merely cites two cases that he represents stand for the obvious proposition that "prosecutorial misstatements of the law" are "objectionable" and "subject to court correction." Dkt. No. 127 at 217-18 (citing Boyde v. California, 494 U.S. 370, 384

(1990); <u>California v. Brown</u>, 479 U.S. 538, 541 (1987)).[12] This is not sufficient to show that the Georgia Supreme Court's decision was unreasonable, which Mr. Heidler must do at this stage. Accordingly, this claim fails.

### C. Misrepresenting the Jury's Role; Appealing to the Jury's Passions and Prejudices; and Arguing that the Jury's Responsibility was to Impose Death

These claims——Part V.C.3-5 of Petitioner's Brief in Support, dkt. no. 127 at 218-22——are not presented in his Third Amended Petition. Accordingly, they do not meet the pleading standards required by Rule 2(c). Specifically, Rule 2(c) requires, in relevant part, that "[t]he petition . . . (1) specify all grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground." 28 U.S.C. § 2254, Rule 2(c). Since Mr. Heidler did not allege these claims in his operative pleading, his Third Amended Petition, they must fail.

For the above reasons, Mr. Heidler's claims regarding prosecutorial misconduct during the closing argument of the penalty phase of trial are denied.

### IV. Trial Court Erred by Admitting Videotaped Hearsay that Lacked Indicia of Reliability

Mr. Heidler claims that the trial court "erroneously allowed the State to introduce damaging hearsay, which violated Mr.

---

[12] Of note, <u>Brown</u> reiterates the principle that capital defendants must generally be allowed to introduce any relevant mitigating evidence, 479 U.S. at 541, and the prosecutor's statement did not misstate this principle.

Heidler's rights to due process and fundamental fairness." Dkt. No. 127 at 264. Specifically, Heidler objects to the trial court allowing the prosecution to play two videotapes for the jury, each of which contained an interview of minor: A.D. and B.D., respectfully. The trail court allowed the tapes to be played to the jury under Georgia's child-hearsay statute.[13] The statute, allowed the introduction of certain out-of-court statements in cases involving the sexual abuse of children. The statute read:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

O.C.G.A. 24-3-16 (1995).

Mr. Heidler argues that the trial court's finding that the interviews of the two girls provided "sufficient indicia of reliability" was incorrect "because the record reflects serious problems with the girls' statements." Dkt. Not. 127 at 267. Further, he argues that "[t]hese problems so thoroughly undermine the statements' reliability that admission of the tapes violate[d] Mr. Heidler's rights to due process and his right to confront the witnesses against him." Id. Finally, Mr. Heidler claims that he is

---

[13] During Mr. Heidler's trial, Georgia's child-hearsay statute was codified at O.C.G.A. § 24-3-16, but it has since been amended and re-codified at O.C.G.A. § 24-8-820.

AO 72A
(Rev. 8/82)

entitled to *de novo* review on this claim because the trial court's findings were based on unreasonable determinations of fact. See 28 U.S.C. § 2254(d)(2).

Assuming *arguendo* that these claims are not procedurally barred (as the State argues), they fail on their merits. Regarding the first videotape at issue, the interview of A.D., a ten-year-old who Mr. Heidler sexually assaulted, the trial court found:

> Well it appears to me that the atmosphere and circumstances under which the statement was made satisfies [Georgia's child-hearsay statute], the spontaneity of the child's statement to the persons present, the persons present did not seem to press the child for answers. I did not glean that they put words in the child's mouth. They did make suggestions, but obviously that's necessary. The child's age, she appears to me to be very intelligent for her age, she was responsive to the questions, and the child's general demeanor was certainly good. She was not emotional. I think she was very aware of what she was doing. She was reluctant to speak when the man was there, but she apparently was able to speak to the DFCS worker. There were no threats or promises of any benefits to her. She was complimented on what she did, but that was generally after she said some things. She was complimented about her behavior when she was in jeopardy, and she apparently used good judgment then, and I see nothing wrong with the DFCS worker complimenting her on what she had done previously. She looked like to me she held her presence very well under the very trying and terrible circumstances. And there was - well, no presence of any drugs or alcohol. The child appeared to me to be creditable, and her credibility was good. And there was no coaching that I found from by [sic] parents or other third parties, or certainly there's no evidence of that. And she was examined very early after the event, and I think that goes to her credibility. Of course the jury is going to have to pass on that anyhow. I see nothing that would detract from the indicia of reliability. It seems certainly reliable to me and should go to the jury.

Dkt. No. 13-16 at 132-33.

From this laundry list of factual findings and indicia of reliability, Mr. Heidler focuses on the spontaneity finding and argues that it was an unreasonable determination. Mr. Heidler begins by noting that the tape starts with A.D. talking as if she was in the middle of a conversation. Then, Mr. Heidler points out that at approximately the five minute and seven minute mark, the GBI Agent brought up three details that had not yet been mentioned on the tape. Finally, Mr. Heidler argues that circumstantial evidence suggests that the GBI Agent spoke with A.D. prior to the DFCS investigator being present.

Despite these arguments, this Court finds that the trial judge's determination—that sufficient indicia of reliability existed to admit the videotaped interview of A.D.—was not unreasonable, nor was it based on any unreasonable determinations of fact. This is true even though it appears that the videotape did not start at the very beginning of the interview. Admittedly, Mr. Heidler's circumstantial evidence that topics were covered with A.D. prior to the recording commencing undermines the trial court's finding of spontaneity; nevertheless, the spontaneity finding was not erroneous or unreasonable. For example, Mr. Heidler has not shown that the topics that appear to be discussed during the recording were also discussed with A.D. before the recording commenced. The GBI agent could have discovered this information by

AO 72A
(Rev. 8/82)

other means, such as from the third child Mr. Heidler kidnapped who was also interviewed by the authorities. Furthermore, Mr. Heidler did not challenge other findings that were crucial to the trial court's holding of admissibility, including that A.D. was intelligent, responsive, credible, aware of what she was doing, and had a good general demeanor. For these reasons, Mr. Heidler has not met his burden of proof regarding this claim, and it fails.

Next, Mr. Heidler argues that the leading questions used by authorities during their interview of B.D. renders the trial court's finding of admissibility so unreasonable that no fairminded jurist could agree with it. Out of the approximately thirty pages of transcript, Mr. Heidler points to a page in transcript that contains some leading questions. More specifically, Mr. Heidler argues, in part, that "the adults used leading questions to elicit several details from B.D., including the allegations that Mr. Heidler went to the back of the van and 'had sex' with A.D." Dkt. No. 127 at 272. The portion of the interview that Mr. Heidler points to in support of this position simply does not show that leading questions elicited that response. The interviewers simply asked if something happened. They never suggested that the "something" was "sex with [A.D.]." See Dkt. No. 13-17 at 14-15.[14]

---

[14] Here is a more complete version of the exchange:

Mr. Heidler further argues that the interviewers acted impermissibly by telling B.D.:

> We've already talked with [A.D.], and we've already talked with [your other sister, A.A.]. So we're trying to get, trying to understand what everybody saw and what happened to everybody, you know, during the night. And, uh, if you saw something that happened to [A.D.], let us know because we need to know what you saw. What happened to [A.D.] back there?

Dkt. No. 13-17 at 15-16. Specifically, Mr. Heidler claims that "[t]he adults [used] a strongly suggestive interviewing technique, implying that B.D. should confirm details that A.D. and A.A. had already revealed." Dkt. No. 127 at 272. The Court strongly disagrees with this characterization of the interviewers' statements to B.D., an eight-year-old who witnessed her sister

---

GBI Agent: Did he ever get in the back of the van? Did he hurt you? Okay. Did he hurt [A.D.]?
B.D.: Uh-uh.
GBI Agent: He didn't? Did - did you see him in the van, in the back of the van with [A.D.]?
B.D.: Uh-huh
GBI Agent: You did? What did he do in the back of the van?
DFCS Investigator: [B.D.], did something happen in the back of the van with [A.D.]? What happened?
B.D.: He did it with [A.D.].
DFCS Investigator: He did what with [A.D.]? It's okay to tell us.
GBI Agent: Yeah, you can tell us. [A.D.] - [A.D.] didn't do anything wrong.
DFCS Investigator: No.
GBI Agent: Not at all, and it's okay for you to tell us. Okay?
DFCS Investigator: We've already talked with [A.D.], and we've already talked with [A.A.]. So we're trying to get, trying to understand what everybody saw and what happened to everybody, you know, during the night. And, uh, if you saw something that happened to [A.D.], let us know because we need to know what you saw. What happened to [A.D.] back there?
B.D.: (Unintelligible) had sex with [A.D.].
DFCS Investigator: He had sex with [A.D.]? Did you see it happen?
B.D.: Yes, ma'am.

Dkt. No. 13-17 at 14-15.

being sexually assaulted mere hours before being interviewed. The interviewers did not say, "A.D. said [x]," or "A.A. said [y]." The interviewers simply said that they had talked with both sisters— the implication being that it was permissible for B.D. to talk to them, too. Such statements by a trained DFCS Investigator and a trained GBI officer are not improper.

Moreover, a review of the exchange between B.D. and the authorities reveals that very few leading questions were used, and when they were used, it was to turn B.D.'s attention towards a new topic. At no time were leading questions used to prompt B.D. to testify in a specific way. Therefore, the facts in this case are distinct from the the only case Mr. Heidler cites in support of this claim, Idaho v. Wright, 497 U.S. 805 (1990). There, the United States Supreme Court affirmed the Supreme Court of Idaho's finding that a child's hearsay statements should not have been admitted because the interview lacked certain procedural safeguards: the interview was not taped, the interviewer asked "blatantly leading questions," and the interviewer had a "preconceived idea of what the child should be disclosing." Id. at 812-13 (quoting State v. Wright, 116 Idaho 382, 385 (1989)).[15] Accordingly, Mr. Heidler has not met his burden on this claim. Finally, Mr. Heidler cannot show

---

[15] The Court also notes that the Supreme Court of Georgia found that A.D. and B.D. "were also available to testify if Mr. Heidler desired to cross-examine them." Heidler, 273 Ga. at 60. Mr. Heidler has not sufficiently rebutted this factual finding, even though he has conclusorily argued to the contrary.

prejudice by the admission of B.D.'s interview tape, which merely corroborated what A.D. had testified to in A.D.'s taped interview. For the above reasons, Mr. Heidler's claim that the trial court erred by admitting videotaped hearsay that lacked indicia of reliability fails. Therefore, this claim is denied.

## V.    Mr. Heidler was Incompetent to Stand Trial

Mr. Heidler argues that the state violated his right to due process because he was not competent to stand trial. He requests an evidentiary hearing on this issue. The trial court found—after a competency hearing and multiple evaluations by independent mental health experts—that Mr. Heidler was competent to stand trial, and Mr. Heidler did not challenge that determination on appeal or during his state habeas proceedings; however, this claim is not procedurally defaulted. See Lawrence v. Sec'y Fla. Dep't of Corr., 700 F.3d 464, 481 (11th Cir. 2012) ("We have both pre- and post-AEDPA precedent . . . holding that substantive competency claims generally cannot be procedurally defaulted"); but see Thomas v. Wainwright, 788 F.2d 684, 688 (11th Cir. 1986) (finding that "once the issue of competency to stand trial is raised and the state court takes the proper steps to resolve the issue, the defendant is [not] free to drop the issue or later pick it up as it suits his purposes").

For background information on the trial court's determination of competency, this Court looks back to September 10, 1998 when the trial court was provided with a letter—dated September 9,

1998—from Dr. James Maish (a mental health expert hired by the defense to evaluate Mr. Heidler) to Mr. Michael Garrett (one of Mr. Heidler's defense counsel). Dkt. No. 12-4 at 5. The trial court characterized the report contained within the letter as "inconclusive" with respect to Mr. Heidler's mental health status. Id. In an order dated September 29, 1998, the trial court directed counsel to give "guidance to the court pertaining to: (1) timetable for completion of the mental evaluation of the defendant; [and] (2) issues of defendant's competency to be presented at a non-jury hearing before the court . . . ." Id. at 7. Thereafter, on January 15, 1999, the trial court, finding that "the mental competency of [Mr. Heidler] has been called into question," ordered that the Forensic Psychiatry Program at Georgia Regional Hospital conduct an evaluation of Mr. Heidler to determine (1) his competency to stand trial and (2) the degree of criminal responsibility or mental competence at the time of the act. Id. at 37-38. As Georgia Regional Hospital psychiatrists—Dr. Gordon Ifill and Dr. Nic D'Alesandro—neared the completion of their evaluation, the trial court also ordered that Dr. Everett Kulgar—a retired psychiatrist, former superintendent of Georgia Regional Hospital and another hospital, and former state forensic medical director —to review the assessments of Dr. Ifill, Dr. D'Alesandro, and Dr. Maish, and, if necessary, to personally evaluate Mr. Heidler. Id. at 48-49.

On May 25, 1999, the trial judge held a hearing to determine whether Mr. Heidler was competent to stand trial. Dkt. No. 13-3. To start the hearing, the trial judge noted that he had been, or would be, provided with the following: Dr. Maish's September 9 preliminary report, Drs. Ifill and D'Alesandro's final reports (collectively, the "Georgia Regional Hospital Reports"); and Dr. Kulgar's evaluation. Id. at 3-4. Dr.

At the hearing, Dr. Kulgar testified first. Dr. Kulgar concluded that although "there may be questions of further elaboration required," and there was "some degree of mental illness present" in Mr. Hiedler, he was "competent to stand trial." Id. Dr. Kulgar based this opinion on his review of the Georgia Regional Hospital Reports, another report that was done at Milledgeville Central State Hospital, three reports by Dr. Maish, and "some really extensive childhood records . . . including the various mental health problems and juvenile court problems that [Mr. Heidler] had." Id. at 5. Dr. Kulgar also testified that he met with Mr. Heidler for the first time the morning of the hearing for about an hour. Id. at 5-6.

Dr. D'Alesandro testified next. He testified that he was "exclusively in agreement with Dr. Kulgar" in that he and Dr. Ifill found "Mr. Heidler to be competent," because Mr. Heidler "understand[s] the legal process and understand[s] the functions of the officers of the court." Id. at 9. Dr. D'Alesandro

further testified that he and Dr. Ifill also had Mr. Heidler evaluated at Milledgeville Central State Hospital, "which involved a full neurological workup," that looked for "physical damage that might contribute to psychological dysfunctioning." Id. at 10.

Then Dr. Ifill testified. It was his "opinion that [Mr. Heidler] does meet the criteria for being found competent to stand trial." Id. Dr. Ifill further testified that he "met with Mr. Heidler on a couple of occasions, once up at the county jail here and then we had him come down to our hospital, and we interviewed him there." Id. at 11. Each of these interviews lasted approximately two hours. Id. Dr. Ifill also testified that the Milledgeville Central State Hospital evaluation discovered no evidence that Mr. Heidler suffered from gross neuropsychological dysfunction. Id. at 12-13.

On August 30, 1999, the trial judge determined that Mr. Heidler was competent to stand trial. Dkt. No. 12-7 at 59-60. The judge noted that "[s]ince the beginning of jury selection of this criminal action I have neither observed facts which raise doubt as to the sanity of the accused, nor have such facts been brought to my attention." Id. at 60. The judge also noted that if Mr. Heidler appeared to be incompetent during the trial, appropriate steps would be taken. Id.

As an initial matter, the state trial court's determination that Mr. Heidler was competent to stand trial was an adjudication

of this claim on the merits within the meaning of AEDPA.[16] Accordingly, AEDPA applies. Mr. Heidler, then, must show that the trial court's decision on this claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The cases upon which Mr. Heidler relies to support this claim are either pre-AEDPA or do not involve a state court decision on the merits. Moreover, those cases review their respective claims *de novo*, and as such, are not applicable to this claim.[17] Here, the Court is constrained by AEDPA, which dictates the standard of

---

[16] The trial court's decision was also the last and only adjudication of this claim on the merits. Thus, it is that decision to which the Court looks under AEDPA. See Wilson v. Sellers, 138 S. Ct. at 1191 (finding that federal courts should examine the last state-court decision that provides "a relevant rationale").

[17] For example, in Lawrence v. Sec'y, Fla. Dep't of Corr. the issue of competency was never raised (even at the trial court level) until the petitioner's federal habeas petition. 700 F.3d 464, 467-68 (11th Cir. 2012). In Pardo v. Sec'y, Fla. Dep't of Corr., the issue was a procedural competency claim, and the petitioner's trial counsel stipulated to the petitioner's competence (such that the trial court never made an adjudication on the claim). 587 F.3d 1093, 1100 (11th Cir. 2009). See also Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1259 (11th Cir. 2002) ("We review [petitioner's substantive competency claim] without any § 2254(d)(1) deference, because there is no state court decision on the merits of this claim," in part because the trial court never inquired into competency); Johnston v. Singletary, 162 F.3d 630, 632 n.1 (11th Cir. 1998) (applying pre-AEDPA standards to the petitioner's substantive competency claim because the habeas petition was filed before the effective date of AEDPA).

review for both reviewing this claim on its merits and whether an evidentiary hearing is warranted.

In Dusky v. United States, the United States Supreme Court established the standard for when a defendant is mentally competent to stand trial: the test is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. 402, 402 (1960). Thus, this Court must determine whether the trial court unreasonably applied the test above, unreasonably applied some other clearly established law, or based its decision on an unreasonable determination of fact. As explained below, the trial court's decision reflects none of these errors. Accordingly, this claim fails.

Here, Mr. Heidler has not set forth any evidence showing that the trial court's decision satisfies the standards of § 2254(d)(1) and (2). For example, Heidler looks to evidence developed during the state habeas evidentiary hearing and the state habeas case; however, this evidence was not before the trial court when it made its decision on this claim. Accordingly, this Court cannot consider it. See Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

Second, because Mr. Heidler misapplies a *de novo* standard of review to this case, he has not set forth any evidence showing that the trial court's decision satisfies the standards of § 2254(d)(1) or (2). Comparatively, as the trial court record shows, its decision was eminently reasonable. Every mental health expert who evaluated Mr. Heidler concluded that he was competent to stand trial because he "understand[s] the legal process and understand[s] the functions of the officers of the court." Dkt. No. 13-3 at 9. Moreover, the trial court's order made the factual finding (which Mr. Heidler has not challenged) that "[s]ince the beginning of jury selection of this criminal action I have neither observed facts which raise doubt as to the sanity of the accused, nor have such facts been brought to my attention." Dkt. No. 12-7 at 60. Since the trial court did not unreasonably apply any federal law nor did it make an unreasonable determination of fact in reaching its conclusion, Mr. Heidler's claim fails, and he is not entitled to an evidentiary hearing. Both are denied.

## VI.   Mr. Heidler is Competent to be Constitutionally Executed

Mr. Heidler claims he is incompetent to be executed in conformity with due process and the Eighth Amendment because of his severe mental illness and persistent delusional state. Dkt. No. 124 at 14-15 ¶¶ 24-30. Assuming *arguendo* that this claim is not procedurally defaulted (as the Court already found, see dkt. no. 56), binding precedent forecloses this claim. See Carroll v.

*Secretary, DOC*, 574 F.3d 1354, 1369 (11th Cir. 2009) (holding that *Atkins v. Virginia*, 536 U.S. 304 (2002), "protects only those individuals who are mentally retarded" (emphasis omitted). Accordingly, this claim fails.

## VII. Ineffective Assistance of State Habeas Counsel

Although Mr. Heidler sets forth this claim in his Third Amended Petition, he does not argue it in his Brief in Support. In the Third Amended Petition, Mr. Heidler claims:

> Post-conviction counsel rendered ineffective assistance of counsel in litigating trial and appellate counsel's ineffectiveness in a variety of ways, including but not limited to failing to thoroughly investigate Petitioner's claims; failing to obtain and utilize available, relevant evidence; failing to adequately litigate Petitioner's claims; failing to present relevant and favorable testimony by live witnesses; failing to preserve the testimony of witnesses; and failing to ensure that Petitioner was competent during critical stages of his state habeas proceedings.

Dkt. No. 124 at 33 ¶ 47. Assuming *arguendo* that these allegations satisfy the pleading standard, such conclusory statements are insufficient to satisfy his burden at this stage. Thus, these claims must fail.

Mr. Heidler also argues that his state habeas counsel was ineffective in failing "to allege that some aspects of trial counsel's ineffective representation at the sentencing hearing were attributable to second chair counsel's actual conflict of interest." Id. at 33-34 ¶ 48. The Court has already determined that this claim is meritless, see Dkt. No. 97 at 29-30, and sees

no reason to find differently now. Accordingly, this claim fails. It is denied.

## VIII. Guilt/Innocence Phase Jury Instructions

Mr. Heidler takes issue with a number of the jury instructions from the guilt/innocence phase of his trial. Each issue he raises is addressed below; however, each is ultimately unsuccessful. Specifically, he claims:

**A.    The trial court understated the Government's burden of proving his guilt beyond a reasonable doubt.**

The trial court's jury instructions closely mirror Georgia's current pattern jury instructions. Compare Dkt. No. 14-7 at 11–13 with GAJICRIM 1.20.10 (current to August 2019). Further, similar charges have been upheld, and the Court sees no reason to find this one inadequate. Johnson v. Kemp, 759 F.2d 1503, 1508 (11th Cir. 1985) (upholding use of "wavering, unsettled or unsatisfied"); United States v. Campbell, 61 F.3d 976, 980–81 (1st Cir. 1995) (upholding use of "doubt based upon reason and common sense."); Watkins v. Ponte, 987 F.2d 27, 32 (1st Cir. 1993) (upholding distinction of government's burden from "mathematical certainty"). This claim fails.

**B.    The trial court vaguely defined guilty but mentally ill.**

Again, the trial court's definition hues closely to the one in Georgia's current pattern jury instructions. Compare Dkt. No. 14-7 at 30 with GAJICRIM 3.80.40 (current to August 2019). Mr.

Heidler has not given the Court reason to think a different charge was "constitutionally required," nor has the Court found any "dispositive case supporting [his] position." State v. Laible, 594 N.W.2d 328, 333-34 (S.D. 1999) (considering instruction did not distinguish mental illness from mental depravity). This claim fails.

### C. The trial court burdened Mr. Heidler with proving his mental illness beyond a reasonable doubt.

The trial court indeed did so, but it did so in accordance with Georgia's current pattern jury instructions. Dkt. No. 14-7 at 30; GAJICRIM 3.80.40 (current to August 2019). AEDPA bars granting Mr. Heilder relief on this ground because "no decision of the United States Supreme Court clearly establishes that [this] is unconstitutional." See Hill, 662 F.3d at 1360. This claim fails.

### D. The trial court improperly instructed the jury on intellectual disability.

The Georgia Supreme Court found "no evidence" supporting this charge, Heidler, 273 Ga. 54, 63 (Ga. 2000); however, this Court presumes that the jury correctly determined the facts and thus did not let the baseless charge mislead it in any way. See Sochor v. Florida, 504 U.S. 527, 538 (1992); see also Griffin v. United States, 502 U.S. 46, 59-60 (1991). Accordingly, this claim also fails.

**E.** **The trial court wrongly instructed the jury on the consequences of different verdicts, and on who would have custody of Mr. Heidler if they found him "guilty but mentally ill" or "guilty but mentally retarded."**

The trial court charged the jury that a verdict of "not guilty by reason of insanity" would result in Mr. Heidler being "committed to a state mental health facility until such time, if ever, the court is satisfied that he should be released pursuant to law." Dkt. No. 14-7 at 29. This charge was statutorily mandated. O.C.G.A. § 17-7-131(b)(3)(A); Moore v. State, 217 Ga. App. 207, 209 (1995) (en banc) (holding giving summary version to be reversible error). "[N]o decision of the United States Supreme Court clearly establishes that [this charge] is unconstitutional," so AEDPA bars granting Mr. Heidler relief on this ground. Hill, 662 F.3d at 1360; see also id. at 1343–47.

Next, the trial court charged that a verdict of "guilty but mentally ill" would result in Mr. Heidler being "given over to the Department of Corrections or to the Department of Human Resources as the mental condition of the defendant may warrant." Dkt. No. 14-7 at 30. At the time of Mr. Heidler's trial, this language tracked the charge required by O.C.G.A. § 17-7-131(b)(3)(C). See Moore, 217 Ga. App.at 208-9 (holding that the "shall" used within the statute mandates that state courts use the statutory language). Thus, the charge was accurate. In addition, AEDPA bars granted Mr. Heidler relief on this ground, because "no decision of the United

States Supreme Court clearly establishes that [this then-mandatory charge] is unconstitutional." <u>Hill</u>, 662 F.3d at 1360.

The trial court continued, charging that a verdict of "guilty but mentally ill" "has the same force and effect as any other guilty verdict, with the additional provision that the Department of Corrections or other incarcerating authority provide mental health treatment." Dkt. No. 14-7 at 30-31. This is factually correct, so there is no basis for finding it unconstitutional. Accordingly, it is not a ground for relief. See <u>Hill</u>, 662 F.3d at 1360; <u>United States v. Bankston</u>, 121 F.3d 1411, 1415-16 (11th Cir. 1997); <u>Logan v. State</u>, 256 Ga. 664, 664 (Ga. 1987).

The trial court's initial charge on "guilty but mentally retarded" was not materially different from the one it gave on "guilty but mentally ill." Dkt. No. 14-7 at 31-32. At the time, it, too, was statutorily mandated. See <u>Morrison v. State</u>, 276 Ga. 829, 877, 877 n. 11 (2003). The Court finds no Supreme Court precedent establishing that this charge is unconstitutional, so AEDPA bars relief here, too. <u>Hill</u>, 662 F.3d at 1360.

Lastly, the trial court recharged the jury that a verdict of "guilty but mentally retarded" "would preclude any further deliberations by the jury regarding punishment and the Court would then automatically sentence the defendant to life in prison with eligibility for parole." Dkt. No. 14-7 at 60. Giving this recharge was an error, as the Georgia Supreme Court found. <u>Heidler</u>, 273 Ga.

at 63. However, the Georgia Supreme Court also correctly recognized the error's harmlessness beyond a reasonable doubt, because "[a] finding of guilty but mentally retarded would not have been authorized" given the evidence. Id. ("[A]ll three court-appointed mental health experts testified that Mr. Heidler was not mentally retarded and that he had an IQ in the low-average range. There was no evidence presented to the contrary. In fact, Mr. Heidler's counsel conceded this point on closing argument . . .."). Thus, this is not a ground for relief. See Bester v. Warden, 836 F.3d 1331, 1338 (11th Cir. 2016) (observing that a court need not grant relief for an error that is harmless beyond a reasonable doubt). Accordingly, this claim fails.

F. **The trial court wrongly instructed the jury as to merger of charges.**

The Court cannot identify any such charge in the record. This claim is without merit and fails accordingly.

G. **The trial court did not instruct the jury on lesser included offenses.**

This is not a ground for relief because Mr. Heidler did not request any such charge or object to its omission. Heidler, 273 Ga. at 62-63; See United States v. Ford, 649 F. App'x 756, 759 (11th Cir. 2016) (per curiam) (citing United States v. Chandler, 996 F.2d 1073, 1099 (11th Cir. 1993) (holding that where a defendant fails to request an instruction on a lesser included offense, and fails to object to the omission of such an instruction

at trial, it is not error for a district court to fail to give such an instruction *sua sponte*). This claim fails.

**H.    The trial court told the jury the case would not proceed to aggravation/mitigation if the jury gave a verdict of guilty but mentally ill or guilty but mentally retarded.**

In fact, the trial court only charged this in reference to a verdict of "guilty but mentally retarded." Dkt. No. 14-7 at 60. As discussed above, this error was harmless beyond a reasonable doubt, so it is not a ground for relief. This claim fails.

**I.    The trial court failed to adjust its definitions of child molestation and aggravated sodomy to the law and facts.**

The trial court's definition of aggravated sodomy, in the context of all the jury instructions, was about as adjusted as two charges that were upheld by the Georgia Court of Appeals as adequate. Compare Dkt. No. 14-7 at 24 with Rice v. State, 243 Ga. App. 143, 145-146 (2000); Miles v. State, 201 Ga. App. 568, 570 (1991). Likewise, the trial court's definition of child molestation, taken in context, was about as adjusted as one upheld by the Georgia Court of Appeals as adequate. Compare Dkt. No. 14-7 at 24-25 with Clemens v. State, 318 Ga. App. 16, 20 (2012). Thus, this court finds both charges in the present case adequately adjusted. This claim, like the many before it, fails.

J.   **The trial court used vaguely defined statutory terms.**

This claim is insufficient to meet Mr. Heidler's burden. He does not identify the jury instruction(s) or statutory term(s) that he is challenging. It fails.

K.   **The trial court made it possible for jurors to disagree as to what underlying crime supported a possible felony-murder verdict.**

This issue was mooted by Mr. Heidler's malice-murder conviction. Darville v. State, 289 Ga. 698, 700 ("We conclude this issue is moot because [Defendant's] felony murder conviction was vacated by operation of law based on his conviction for the charge of malice murder."). This claim fails.

L.   **The trial court gave a burglary charge despite insufficient evidence that Mr. Heidler lacked authority to enter the Daniels' dwelling.**

There was sufficient evidence. Mr. Heidler "entered the [Daniels'] home by using a ladder to climb through a bathroom window in the early morning hours, when the occupants were in nightclothes and in bed, and . . . stole a shotgun and committed murders once inside." Heidler, 273 Ga. at 61. This claim fails.

M.   **The trial court failed to adjust its insanity charge to the law and facts.**

Mr. Heidler argues that the trial court should have charged the jury on "delusional compulsion" because testimony supported a delusion. Dkt. No. 124 at 51-52 ¶ 75. Mr. Heidler, however, points to no case law or authority for why the trial court should have

made this charge or why it was an error for the trial court not to do so. Moreover, Mr. Heidler does not explain how the Georgia Supreme Court's determination on this issue, Heidler, 273 Ga. at 62, was unreasonable. This claim fails.

### N. The trial court failed to charge on delusional compulsion.

The Georgia Supreme Court found, "Heidler never requested such a charge, the evidence did not support it, and the defense never suggested that he was acting under a delusional compulsion when he committed the crimes." Heidler, 273 Ga. at 62; see also Ford, 649 F. App'x at 759 (citing Chandler, 996 F.2d at 1099). Accordingly, this claim, like the ones that precede it, fails.

## IX. Trial Court's Restriction of *Voir Dire*

Mr. Heidler claims in his Third Amended Petition (but does not argue in his Brief in Support) that the trial court erroneously restricted the defense's questions of prospective jurors during *voir dire*. This claim, however, was never raised on direct appeal or in the state habeas proceedings. As the State argues in its Answer to the Third Amended Petition, dkt. no. 128, this claim is unexhausted. Further, this claim is procedurally defaulted because any attempt to exhaust in the Georgia courts would be futile. See O.C.G.A. § 9-14-51 (requiring a state habeas petitioner to raise "[a]ll grounds for relief . . . in his original or amended petition," or else such ground for relief is waived—with

exceptions that do not apply here). Finally, Petitioner has not attempted to show cause and prejudice for this failure or that procedural default would result in a miscarriage of justice. Accordingly, this claim fails.

## X. Photographic and Video Evidence

Mr. Heidler claims that the trial court's admission of "inflammatory, prejudicial, and cumulative photographs of the victim[s]" that had "limited relevancy and materiality" and whose "prejudicial impact outweighed any probative value" violated his constitutional rights. Dkt. No. 124 at 65 ¶ 108. This claim fails. Here, the trial court "admitted into evidence five photographs of the victims taken at the crime scene." Id. In one, the bedsheet that had been covering Mrs. Daniels' body had been removed. Heidler, 273 Ga. at 59. Jurors were also shown a crime-scene videotape. Id.

This did not violate the U.S. Constitution. "The introduction of graphic photographic evidence rarely" does. Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992). Mr. Heidler has given this Court no reason to think this case is an exception to that general rule, and this Court does not find the photographs in this case exceptionally gruesome within the universe of murder crime scene photographs. See Dkt. No. 14-3 at 4-8, 12-13.

The combined use of the photographs along with the videotape does not violate the Constitution, either. The videotape gave

jurors "a three dimensional view" of the "physical relationship" of the bodies to each other and their surroundings, while the photographs provided "a close up." Rhodes v. Sec'y, Dep't of Corrs., No. 8:09-CV-1350, 2010 WL 3819358, at *67 (M.D. Fla. Sept. 30, 2010); Crone v. McDonough, No. 5:05cv47, 2006 WL 3483487, at *9 (N.D. Fla. Dec. 1, 2006). This sort of evidentiary presentation is constitutionally permissible. Accordingly, this claim fails.

## XI. Cumulative Constitutional Violation

Mr. Heidler claims that "the sheer number and types of errors involved in his proceedings—when considered as a whole"—add up to a constitutional violation. Dkt. No. 124 at 68 ¶ 116. However, there is nothing to add up because—for the reasons above—all of Mr. Heidler's constitutional claims fail. Accordingly, there is nothing to accumulate, and, as such, Mr. Heidler cannot prevail on his cumulative-error claim. Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th Cir.2014). It is denied.

## XII. Constitutionality of Georgia's Lethal-Injection Scheme

Mr. Heidler claims Georgia's lethal-injection scheme violates due process and the Eighth Amendment because state law forbids him from discovering the source and quality of the drugs that will be used to execute him, and the compounded pentobarbital that will be used poses an unconstitutional risk of pain, suffering, and harm. Dkt. No. 124 at 78-86 ¶¶ 141-56. Binding precedent forecloses both claims. See generally Wellons v. Comm'r, Ga. Dep't of Corrs., 754

F.3d 1260 (11th Cir. 2014) (per curiam); accord Jones v. Comm'r, Ga. Dep't of Corrs., 811 F.3d 1288, 1293-94, 1296 (11th Cir. 2016).

## XIII. Sufficiency of the Evidence

Mr. Heidler claims there is insufficient evidence supporting his guilty verdict, given that he proved he was "guilty but mentally ill" beyond a reasonable doubt. Dkt. No. 124 at 86-92 ¶¶ 157-71. Even assuming he did, "a verdict of guilty but mentally ill does not preclude a death sentence" under Georgia law, so "the relevant issue [here] is the role that mental health evidence . . . played during the mitigation phase." Cook v. Upton, No. 5:09-CV-25, 2010 WL 1050404, at *20 (M.D. Ga. Mar. 18, 2010), aff'd sub nom. Cook v. Warden, Ga. Diagnostic Prison, 677 F.3d 1133 (11th Cir. 2012) (per curiam); Lewis v. State, 279 Ga. 756, 764 (2005). This Court adequately discussed that issue above, when it found that the state habeas court reasonably found that Mr. Heidler's trial counsel's investigation and presentation of mitigating evidence was adequate. See supra I.C. This claim is denied.

## XIV. Incompetence During State Habeas Proceedings

Mr. Heidler claims he was incompetent during the state habeas proceedings, dkt. no. 124 at 93-96 ¶¶ 172-78, but "[h]e cites no authority for the proposition that the Constitution requires a death row inmate to be mentally competent to assist counsel in pursuing state habeas relief or to participate in state habeas proceedings." Delk v. Johnson, 273 F.3d 1098, 2001 WL 1066775, at

*4 (5th Cir. Aug. 13, 2001) (per curiam) (unpublished opinion) (emphasis omitted). He thus seeks adoption of a new procedural rule—which cannot be applied retroactively on collateral review." Id. (citing e.g. Caspari v. Bohlen, 510 U.S. 383, 389 (1994). Therefore, this claim fails.

## XV. Incompetence During These Proceedings

Mr. Heidler's final claim is that he is incompetent now and so these proceedings violate his constitutional rights. Dkt. No. 124 at 96-98 ¶¶ 179-84. But the U.S. Supreme Court has held that there is no constitutional or statutory right to competence in federal habeas proceedings. See Ryan v. Gonzales, 568 U.S. 57, 64, 66 (2013). This claim, like all the claims the precede it, fails.

## XVI. Certificate of Appealability

Federal Rule of Appellate Procedure 22(b)(1) provides in relevant part: "In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a [COA] under 28 U.S.C. § 2253(c)." Under 28 U.S.C. § 2253(c)(2), a COA should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." The United States Supreme Court has recently reemphasized that "[t]he COA inquiry . . . is not coextensive with a merits analysis." Buck v. Davis, 137 S. Ct. 759, 773 (2017). Rather, at this stage, "the only question is

whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. (internal quotation marks and citation omitted).

Here, Mr. Heidler has not made a substantial showing of the denial of a constitutional right. The Court **DENIES** a Certificate of Appealability finding that no jurist of reason could disagree with the Court's conclusions on the issues presented in these claims.

### CONCLUSION

For the reasons above, Mr. Heidler's Third Amendment to Petition for a Writ of Habeas Corpus by a Person in State Custody, dkt. no. 124, is **DENIED**.

**SO ORDERED**, this 12th day of December, 2019.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA